464 So.2d 614 (1985)
Richard Eugene LINN, Appellant/Cross Appellee,
v.
Norma Waters LINN, Appellee/Cross Appellant.
No. 84-449.
District Court of Appeal of Florida, Fourth District.
February 27, 1985.
Rehearing and/or Clarification Denied April 1, 1985.
*615 John R. Young of Hamilton, James, Merkle & Young, West Palm Beach, for appellant/cross appellee.
James M. Tuthill of Christiansen, Jacknin & Tuthill, West Palm Beach, for appellee/cross appellant.
HERSEY, Judge.
The husband, Richard Eugene Linn, appeals, and the wife, Norma Waters Linn, cross appeals a final judgment of dissolution of marriage.
The wife, a homemaker, and the husband, a life insurance salesman, were married in 1957 and separated in 1982. They are now aged forty-three and forty-five, respectively. They have no minor children. Each has only a high school education.
In the 1970s, for a period of eight years, the wife spent four hours per week keeping attendance and accounts at the husband's rotary club. Her only other employment outside the home was as a cashier in a shoe store twenty-three years ago. She testified that she has not tried to find employment since the separation because she has no marketable skills or training; also, she has been depressed. A vocational rehabilitation specialist testified that, considering the wife's age, education, work experience, interests, and aptitudes, she is employable in the business, communications, clerical or sales areas at the entry or minimum wage level, earning $10,000 to $12,000 per year.
Ten years ago, the husband began betting heavily. From 1976 to late 1982 the husband refinanced the marital home and the wife's car; sold three condominiums; sold lots in Jefferson County; and took out a loan on the wife's insurance policy without her knowledge or permission. The parties had planned to purchase a store and to that end executed documents to Atlantic National Bank assuming the obligations of the previous owner. The transaction failed to close but the bank did not relieve the husband of the obligations he had assumed, and sued him on the note.
The husband declared bankruptcy in September 1981 and the wife was forced into involuntary bankruptcy, whereupon she lost her furniture, silver, china and all of her jewelry.
The husband testified that his betting activities did not cause the bankruptcy, but the attorney for the trustee in bankruptcy testified that the husband told him that the problem was all related to his betting and that he had lost over $100,000.
In March 1982 the husband told the wife of his romantic relationship with another woman, which caused the parties' subsequent separation in May.
The wife testified that she needs $3,500-3,700 per month in order to maintain the standard of living to which she had become accustomed during the marriage, as reflected by her financial affidavit. The husband testified that during the last two or three years of marriage, the parties' expenses totaled $1,200-1,500 per month, including the mortgage, utilities, groceries, veterinary bills, and minor clothing expenses. He further testified that during the year and a half of these proceedings, $2,231.69 per month was needed to provide the wife's needs.
The husband also testified as to his earnings for the past several years. Pertinent here are those for 1981 ($80,033); 1982 (approximately $80,033); and 1983 ($87,156). His average gross weekly earnings are $1,579.25. He owes the Bank of South Palm Beach $73,000; Barnett Bank $1,300; Flagler National Bank $1,482 per month; miscellaneous debts of $12,000; and the IRS $19,995 for taxes in 1979, 1980, and 1981.
The trial court awarded the marital home, along with responsibility for the outstanding mortgage balance of $55,000, to the wife. She also received the car; $2,600 per month for sixty months as justification and rehabilitative alimony; $7,500 by January 20, 1984 as justification alimony; and $17,500 for attorneys' fees. The husband *616 was required to maintain life insurance for the benefit of the wife in the amount of $200,000, decreasing by $40,000 each year. The judgment also provides that the wife's remarriage or earning up to $15,000 per year would not constitute grounds for modification of the alimony award.
Being guided by Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), and its prodigious progeny, we affirm the dispositions contained in the final judgment, with three exceptions:
First, there is no competent, substantial evidence to support the proposition that the wife can be habilitated or rehabilitated to the financial stature that would permit her to become self-supporting. An examination of the evidence concerning her needs and her resources dictates that, as a matter of law, she should be awarded permanent, periodic alimony.
In Hirst v. Hirst, 452 So.2d 1083 (Fla.4th DCA 1984), the wife was thirty-seven and the husband was thirty-eight at the time of separation. He earned $62,000 per year and she earned $125 to $175 per week as a waitress. The trial court awarded the wife rehabilitative alimony for seventeen years. This court reversed and granted her permanent periodic alimony, stating:
Permanent, periodic alimony provides for the needs of life to a former spouse as they have been established by the marriage of the parties, while the purpose of rehabilitative alimony is to
establish the capacity for self support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills.

Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980). Nine factors must be taken into consideration in deciding whether to award permanent periodic alimony: the needs of one spouse for the funds; the ability of the other spouse to provide the funds; the parties' earning ability, age, health, and education; the duration of the marriage; the standard of living enjoyed during the marriage; and the value of the parties' estates. Canakaris at 1201-1202. Our review of the record satisfies us that the wife qualified for an award of permanent alimony under the criteria set forth in Canakaris v. Canakaris, supra. The only factor significantly militating against such an award is her relative youth, and the judge's comment indicates that was the primary reason for awarding rehabilitative rather than permanent alimony.
452 So.2d at 1084-85.
In this case, the wife is also relatively young, which could be considered a factor militating against permanent alimony. However, the husband's income in this case is much greater than the husband's in Hirst, and the wife in this case has worked very little outside the home, whereas the wife in Hirst was an experienced waitress who earned $125 to $175 per week. Further, in this case the parties enjoyed a high standard of living as evidenced by their ownership of a $125,000 home and country club membership. Because of the great disparity in the parties' incomes and other factors, permanent alimony should have been awarded. Walter v. Walter, 464 So.2d 538 (Fla. 1985) (permanent periodic alimony proper where husband owned substantial property and wife could expect to earn only minimal salary); Tate v. Tate, 432 So.2d 601 (Fla. 4th DCA 1983) (wife entitled to permanent periodic alimony in light of sharp disparity in parties' education, income and earning capacity); King v. King, 420 So.2d 630 (Fla. 4th DCA 1982) (trial court erred in failing to award permanent periodic alimony to 48-year-old wife who earned $18,300 per year from husband who earned $51,000 per year).
In De Cenzo v. De Cenzo, 433 So.2d 1316 (Fla. 3d DCA 1983), the court said that when a trial court awards rehabilitative alimony when permanent alimony is due, the error is harmful and must be reversed. The appellate court changed an award of rehabilitative alimony to an award of permanent alimony because the husband, a doctor, earned four times as much as the wife, a nurse, citing O'Neal v. O'Neal, 410 So.2d 1369 *617 (Fla. 5th DCA 1982), which provides:
A person is not self-supporting simply because he or she has a job and income. The standard of living must be compared with the standard established during the course of the marriage. A divorced wife is entitled to live in a manner reasonably commensurate with the standard established by the husband during the course of a long-term marriage.
410 So.2d at 1371.
In this case, the wife has neither a job nor income, but even if she became employed the testimony showed that she would probably earn only minimum wage. We therefore hold that she is entitled to an award of permanent periodic alimony and remand with instructions to determine, after notice and hearing, a suitable amount to be awarded to the wife as permanent, periodic alimony.
Second, in the absence of some obligation from the husband to the wife which survives the death of the husband (and none appears on this record), it is error to require the husband to maintain life insurance for the benefit of the wife. We therefore quash that award. Blais v. Blais, 410 So.2d 1365 (Fla. 5th DCA 1982); Weinschel v. Weinschel, 379 So.2d 145 (Fla. 3d DCA), cert. denied, 390 So.2d 827 (Fla. 1980); Perkins v. Perkins, 310 So.2d 438 (Fla. 4th DCA 1975); Wilbur v. Wilbur, 299 So.2d 99 (Fla. 3d DCA 1974).
Third, the trial court established that the wife's remarriage or earning up to $15,000 per year would not be considered grounds for modification of the alimony awards. While, to some extent this is rendered moot by the foregoing determinations, we reverse this aspect of the final judgment as erroneous. Whether the wife's remarriage terminates the periodic award depends upon its nature (which we have now changed) and upon the law in effect when modification on that basis is sought. Whether a particular amount of income will or will not justify modification depends upon a number of things: the nature of the award, the wife's needs, the husband's ability to pay (if permanent, periodic alimony), the health of the parties, and other circumstances which might well affect the trial court's deliberations.
Appellant argues that the $17,500 attorneys' fee award was excessive, in light of the simple issues in the case and the fact that the husband does not have the present ability to pay the fee.
It is within the trial court's discretion to determine a reasonable amount of attorneys' fees based upon its evaluation of all relevant factors, Kozelski v. Kozelski, 448 So.2d 1228 (Fla. 2d DCA 1984), and such determination should not be overturned absent an abuse of discretion. Knott v. Knott, 395 So.2d 1196 (Fla. 3d DCA), rev. denied, 411 So.2d 383 (Fla. 1981).
The purpose of awarding attorneys' fees in matrimonial litigation is to ensure that both parties will have similar competent legal counsel. Gerber v. Gerber, 392 So.2d 317 (Fla. 4th DCA 1980), appeal after remand, 437 So.2d 798 (Fla. 4th DCA 1983). The disparity between the parties' incomes in this case requires that husband pay all of wife's fees. McClay v. McClay, 447 So.2d 1026 (Fla. 4th DCA 1984). We find no error in the award of attorneys' fees.
We therefore affirm in part, reverse in part, and remand with instructions to enter a judgment for permanent, periodic alimony.
DELL and WALDEN, JJ., concur.