490 So.2d 985 (1986)
Peggy J. LAMAN, Appellant,
v.
George I. LAMAN, Appellee.
No. 85-397.
District Court of Appeal of Florida, Fifth District.
June 12, 1986.
Rehearing Denied July 8, 1986.
Seymour Benson, Orlando, for appellant.
Bill McCabe, of McCabe & Cooley, Orlando, for appellee.
UPCHURCH, Judge.
Peggy Laman appeals a final judgment dissolving her sixteen-year marriage to George Laman. She contends that the trial court failed to make an appropriate award of alimony, to equitably distribute the assets of the parties and to award a reasonable attorney's fee. We agree and reverse the final judgment.[1]
In the judgment, the court awarded the wife rehabilitative alimony of $750 per month for five years. The wife was not awarded permanent alimony. At trial, the husband had argued that the wife was capable of being self-supporting and thus rehabilitative, rather than permanent, alimony was the appropriate award. In support of his position, the husband cited Walter v. Walter, 442 So.2d 257 (Fla. 5th DCA 1983), where this court held that "permanent alimony, being a fixed and comparatively unadjustable form of alimony should be the last resort rather than the first." 442 So.2d at 259.
However, after the court below rendered its decision, the Florida supreme court reversed Walter, explaining as follows:
By requiring trial courts to utilize permanent alimony only upon a showing of lack of capacity for self-support and only as a last resort, the district court largely eliminated the Canakaris criteria of `the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates' from the trial judge's consideration. Id. It also appears to have restricted the trial court's ability to use permanent alimony to `balance such inequities as might result *986 from the allocation of income- generating properties acquired during the marriage.' Id. at 1202. By its holding, the district court attempted to establish, as a new rule of law, the presumption that rehabilitative alimony generally must be awarded for an appropriate period before permanent periodic alimony may be made part of a final judgment. We reject this limitation on the discretionary authority of trial courts to utilize permanent alimony in dissolution proceedings. We do not dispute the general authority of the district courts of appeal to establish rules of law, but we must conclude that the strict rule of law set forth by the district court in the instant case is inappropriate because it eliminates from the trial judge's consideration factors that must be evaluated if a just result is to be ensured.
Walter v. Walter, 464 So.2d 538, 539 (Fla. 1985).
In the present case, the wife was forty-seven years old and a high school graduate. The wife suffered from high blood pressure, ulcers, foot and back problems and was a "battered spouse." During the marriage, the wife worked as a bank teller, a secretary and a babysitter, but the most that she ever earned was $200 per week. The husband himself testified that the wife was capable only of repetitive work. This evidence suggests that while the wife may earn some income, she will not be capable of supporting herself in the standard established during the marriage. See O'Neal v. O'Neal, 410 So.2d 1369 (Fla. 5th DCA 1982). See also Priede v. Priede, 474 So.2d 296 (Fla. 2d DCA 1985); Linn v. Linn, 464 So.2d 614 (Fla. 4th DCA 1985); DeCenzo v. DeCenzo, 433 So.2d 1316 (Fla. 3d DCA 1983). The trial court may have been misled by this court's decision in Walter and perhaps felt compelled to award rehabilitative alimony since the wife has worked in the past. However, as was noted above, the wife does not appear capable of maintaining the standard of living established during the marriage. Accordingly, the award of rehabilitative alimony is reversed and the cause is remanded for the court to reconsider the award of alimony in light of the factors set out in Walter and Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).[2]
The trial court should also reconsider the distribution of the parties' assets accumulated during the marriage. In Gardner v. Gardner, 452 So.2d 981 (Fla. 5th DCA 1984), this court described the concept of "equitable distribution" as follows:
Equitable distribution is a court evolved concept in Florida. It is used to achieve a fair division of marital assets, which are those assets acquired by the parties during their marriage from their work efforts, services, and earnings. In determining whether certain property is a marital asset, the question is not which party holds title to the asset. This approach is justified as a means to compensate the homemaker or non-earning partner for his or her contributions to the family unit. Through the mechanism of equitable distribution, assets are generally transferred from the earning spouse to the homemaker spouse since most of the marital assets commonly are in the earning spouse's name.
452 So.2d at 983. While the concept of equitable distribution has not been held to require an absolutely equal division of the marital assets, this court has indicated that is a good starting point. See Ente v. Ente, 442 So.2d 232 (Fla. 5th DCA 1983); Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981).
From our review of the record, the distribution of assets was clearly unequal and inequitable. Apparently the court took assets titled in both names and awarded most of them to the wife to achieve a certain level of income. However, the court appears to have completely ignored the value of the assets titled in the husband's name alone, particularly the husband's *987 corporations and real estate. The wife worked as a homemaker and outside the home while the husband engaged in real estate development. The husband's stock and real estate holdings were acquired while both parties were performing their respective marital functions and hence the corporations and the real estate are marital assets subject to equitable distribution. Since the trial judge failed to treat assets titled in the husband's name as marital assets, we reverse and remand for reconsideration by the trial court. Upon remand the court should also consider claims by either party as to any special equities.[3]
Finally, the trial court should reconsider or clarify its award of attorney's fees. The final judgment provided that the husband pay to the wife's attorney "the sum of $5,000 as partial contribution towards attorney's fees and costs for representation of the Wife... ." An affidavit submitted by the wife's attorney listed costs at $3,088.60 leaving an award of attorney's fees of only $1,911.40. The wife contends this was not the intent of the court and the trial judge's remarks in the record indicate that he intended to award the entire $5,000 as attorney's fees. On remand, this award should be revisited in light of the other awards made by the trial court.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
COWART, J., dissents without opinion.
NOTES
[1] We find no error as to the other points raised by the wife.
[2] In considering the husband's ability to pay, we note that the trial court should consider not only net income, but also net worth, past earnings and the value of the parties' capital assets. Canakaris, 382 So.2d at 1202.
[3] The husband contends he had $100,000 to $200,000 prior to the marriage which he can trace to his businesses.