In reversing portions of the trial court's scheme of property distribution and support obligations in the dissolution proceeding of Diffenderfer v. Diffenderfer, 456 So.2d 1214
(Fla. 1st DCA 1984), the First District held that the husband's entitlement to retirement benefits could not properly be considered marital property subject to equitable distribution, and limited consideration of the benefits to a source of maintenance and support obligations. In so holding, the First District noted conflict and certified to this Court the question of how a spouse's entitlement to pension benefits should impact upon an equitable distribution of property. We have jurisdiction, article V, section 3(b)(4), Florida Constitution, and reverse that portion of the ruling which would require the trial court to close its eyes to such benefits in calculating an equitable distribution of property.
While the First District certified two questions in its opinion, we focus upon the second. The first question certified read as follows:
 Do Conner v. Conner, 439 So.2d 887 (Fla. 1983), and Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983), limit the scope of appellate review enunciated in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980)?
456 So.2d at 1216. We need not expound upon the above question, which we answered in the negative in Marcoux v. Marcoux, 464 So.2d 542
(Fla. 1985). As we noted in Marcoux, nothing in either Conner or Kuvin limits the "reasonableness" review set forth in Canakaris. *Page 266 
Prior to exploring the remaining certified question, we turn to the facts of the case. The parties involved in this appeal, both now in their early fifties, were married in 1953 and over their thirty-year marriage raised four children. Mr. Diffenderfer began engineering school shortly after the marriage. During her husband's studies, Mrs. Diffenderfer worked as a part-time nurse and gave birth to two sons. Subsequently, he began work with the Federal Highway Administration, for which he has worked ever since, and she continued to work part-time during the marriage and care for the children. He now earns some $44,000 annually, and she has returned to full-time nursing at a salary of $23,000.
In fashioning an equitable distribution of the parties' assets, the trial court dealt with the following basic "building blocks" relevant to this appeal — a marital home valued at $119,500, encumbered by mortgages totaling approximately $51,000, a beach house valued at $60,000, encumbered with a $17,000 mortgage, the husband's retirement benefits, calculated over his expected lifetime and reduced to a present value of $297,000, and some $21,000 in personal property.
The trial court's distribution of this property, as noted by the dissent upon appeal, aimed at "devising a method by which the marriage could be truly ended rather than prolonged through financial dependence ad infinitum." 456 So.2d at 1219. Recognizing a special equity of the husband's in the beach house, the trial court granted him exclusive ownership of that property on the condition that he pay off the remainder of the first mortgage on the marital home. As lump sum alimony, the wife was granted one-half of the husband's interest in the marital home. She also received, as rehabilitative alimony, the right to exclusive use and possession of the marital home as long as she remains unmarried. Finally, she was apportioned personal property worth $20,000 to his $1,000.
Through a heavy-handed review, the First District left no part of the above distribution untouched. First, it remanded for possible application of the special equity formula set out inLanday v. Landay, 429 So.2d 1197 (Fla. 1983), to the husband's interest in the beach house. Its remaining changes focused upon the retirement benefits and the court's view of their proper effect on the distribution scheme. Prior to discussing this view, it may be helpful to examine the nature of the asset involved.
During most of the marriage, the husband's employer deducted $119 from his monthly salary and invested the growing sum in a pension plan. These contributions, totalling about $44,000, have blossomed into an entitlement to a pension which is both "vested" (it cannot be forfeited even if employment terminates before retirement) and "mature" (the employee has an unconditional right to immediate payment upon retirement), with an estimated present value of $297,000. If the husband were to retire next year, he could expect an annual income of $25,000 through the plan.
The trial court's treatment of the benefits is unclear. While it initially ruled that only the $44,000 actually contributed to the plan could be treated as a marital asset, it subsequently allowed, over objection, testimony as to the benefits' estimated present value. Upon appeal, the First District, citing Witcig v.Witcig, 206 Neb. 307, 292 N.W.2d 788 (1980), rejected the wife's claims that the retirement plan should have been recognized as a marital asset, and limited consideration of the benefits to a source of maintenance and support obligations. It therefore found error in the lower court's failure to award permanent periodic alimony. This, in turn, led to the court's remanding with additional instructions to consider the propriety of the rehabilitative alimony awarded.
The husband urges this Court to affirm the First District's refusal to classify the retirement benefits as marital property, since the existence of certain contingencies and problems in valuation render calculations based on the pension inherently unworkable and unfair. We reject such a contention, joining the vast majority of *Page 267 
jurisdictions which have found it necessary to consider entitlement to such benefits in order to achieve an equitable distribution. See Ohm v. Ohm, 49 Md. App. 392, 431 A.2d 1371
(Ct.Spec.App. 1981); In re: Marriage of Brown, 544 P.2d 561
(Cal. 1976); Pinkowski v. Pinkowski, 67 Wis.2d 176,226 N.W.2d 518 (1975); Golden, L., Equitable Distribution of Property,
169-77 (1983). We find persuasive the following observations of the New York Court of Appeals:
 Whether the [pension] plan is contributory or noncontributory, the employee receives a lesser present compensation plus the contractual right to the future benefits payable under the pension plan. The value of those contractual rights will vary depending upon the number of years employed but where, as here, the rights are vested, or where they are matured, they have an actuarially calculable value. To the extent that they result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property.
Majauskas v. Majauskas, 61 N.Y.2d 481, 491-92, 463 N.E.2d 15, 20-21, 474 N.Y.S.2d 699, 704-05 (1984).
We accordingly find that the First District erred in its analysis and its resulting wholesale rejection of the delicate balance struck by the trial court through its scheme of property distribution. To adopt the position taken by the First District below would, in effect, place an artificial blinder upon the trial judge, and limit that discretion which is so essential to the doing of equity on the facts of each particular case. Our seminal decision of Canakaris v. Canakaris, 382 So.2d 1197
(Fla. 1980), illustrates the vigilance with which this Court has endeavored to safeguard that discretion.
In Canakaris, we broadened the spectrum of remedies at the trial court's disposal by recognizing a novel use of lump sum alimony. While the remedy had traditionally been based on "need," or "upon some economic contribution by the wife to the accumulation of property," Colucci v. Colucci, 392 So.2d 577, 580 (Fla. 3d DCA 1980), citing Yandell v. Yandell, 39 So.2d 554
(Fla. 1949), Canakaris recognized the usefulness of the remedy in ensuring an equitable distribution of property acquired during the marriage. It created, in effect, a hybrid based on concepts of both property distribution, requiring "a justification for such lump sum payment," 382 So.2d at 1201, and traditional alimony, requiring consideration of the "financial ability of the other spouse to make such payment without substantially endangering his or her economic status." Id. This Court has continued to honor the broad discretionary authority necessary to do equity between the parties. See Tronconi v. Tronconi, 466 So.2d 203
(Fla. 1985).
Because an effective exercise of this discretion through the remedies available to the trial judge presupposes that the court has considered all relevant information, we reject the First District's holding that the pension may not be considered marital property. We affirm, however, its holding that such benefits may be considered as a source of payment of permanent periodic alimony. The potential income may certainly bear on the employee spouse's ability to pay, and as we noted in Canakaris, this factor can be determined "not only from net income, but also net worth, past earnings, and the value of the parties' capital assets." 382 So.2d at 1202, citing Firestone v. Firestone, 263 So.2d 223
(Fla. 1972).
Obviously, however, injustice would result if the trial court were to consider the same asset in calculating both property distribution and support obligations. If the wife, for example, has received through equitable distribution or lump sum alimony one-half of the husband's retirement pension, her interest in his pension should not be considered as an asset reflecting his ability to pay. Any problem with such *Page 268 
redundant consideration, however, is more likely to lie in a piecemeal appellate review rather than the initial fashioning of remedies in the trial court. We therefore hasten to reiterate the warning set out in Canakaris:
 The judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump sum alimony, permanent periodic alimony, rehabilitative alimony, child support, a vested special equity in property, and an award of exclusive possession of property. As considered by the trial court, these remedies are interrelated; to the extent of their eventual use, the remedies are part of one overall scheme. It is extremely important that they also be reviewed by appellate courts as a whole, rather than independently.
382 So.2d at 1202.
Having acknowledged the interrelatedness of the support remedies of periodic and rehabilitative alimony, and the property distribution remedy of lump sum alimony, we should now explore certain distinctions which should be considered in applying these remedies. In most cases, for the following reasons, it may be preferable to deal with pension rights as a marital asset rather than merely a source of support obligations. First, on purely theoretical grounds, recognizing the non-employee spouse's entitlement to the other's pension reflects an appreciation of the former's contribution, indirect though it may be, to the economic success of the latter. See Brown v. Brown, 300 So.2d 719, 726 (Fla. 1st DCA 1974), cert. dismissed, 307 So.2d 186
(Fla. 1975). To the extent acquired during the marriage, the expected benefits are a product of marital teamwork. This, of course, may vary on the facts of each case.
Other problems may result from framing the parties' rights to pension benefits in terms of one's financial need and the other's largesse. The Fifth District Court of Appeal, in Cowan v.Cowan, 389 So.2d 1187 (Fla. 5th DCA 1980), review denied, 397 So.2d 777 (Fla. 1981), charted out some of these potential problems. Prior to granting the wife a lump sum award of the husband's interest in the marital home, and remanding for reconsideration of permanent periodic alimony, the court noted that if he should die, her alimony "would die with him," 389 So.2d at 1188, while in the event of her death he would merely experience an increase in income as his alimony obligation terminated. Such potential unfairness, the court noted, did not treat fairly a wife who had wholeheartedly devoted herself to husband and family for thirty-seven years. See also O'Neal v.O'Neal, 410 So.2d 1369, 1373 (Fla. 5th DCA 1982) ("An award of permanent alimony is not a vested interest in [the husband's retirement plan] and may be terminated or suspended if there is no further need.")
Finally, we note that an attempt to fairly provide for both spouses through a distribution of property often results in a superior resolution of a painful situation. By giving the parties economic independence rather than shackling them to the shattered remnants of a marriage which is irretrievably broken, one through dependence and the other through a duty to pay, the individuals stand a better chance of recovering from the often devastating experience of divorce and beginning to heal. See Tronconi v.Tronconi, 466 So.2d 203, 204 ("The final order thus achieved a clean break from the bonds of matrimony and joint ownership.")
Fully recognizing, however, that often a lack of sufficient offsetting assets or other circumstances may leave the court with little option but to utilize the pension benefits in calculating permanent periodic or rehabilitative alimony, we have no desire to disapprove those Florida decisions in which the court has done just that. See, e.g., Marshall v. Marshall, 445 So.2d 706 (Fla. 4th DCA 1984); Higgins v. Higgins, 408 So.2d 731 (Fla. 1st DCA), review denied, 417 So.2d 329 (Fla. 1982); Bradley v.Bradley, 385 So.2d 101 (Fla. 5th DCA), review denied, 392 So.2d 1392 (Fla. 1980). Lest our observations here be misunderstood, *Page 269 
we once again reiterate our warning in Walter v. Walter, 464 So.2d 538, 540 (Fla. 1985), quoting Canakaris, 382 So.2d at 1197, that we wish to "avoid establishing inflexible rules that make the achievement of equity between the parties difficult, if not impossible."
The instant decision represents no revolutionary departure from Florida law. In fact, the decision under review is the first to expressly refuse to consider pension benefits as marital property in fashioning a scheme of equitable distribution. See e.g.,Clarke v. Clarke, 443 So.2d 486 (Fla. 2d DCA 1984); Hartley v.Hartley, 399 So.2d 1126 (Fla. 4th DCA 1981); Colucci v.Colucci, 392 So.2d 577 (Fla. 3d DCA 1980); Cowan v. Cowan, 389 So.2d 1187
(Fla. 5th DCA 1980), review denied, 397 So.2d 777 (Fla. 1981). Although admittedly certain technical problems exist in reaching an accurate valuation of pension benefits, these uncertainties do not affect the pension's status as property and can be overcome.
Courts have adopted several means of valuing potential future rights. The most preferable approach involves a reduction to present value factoring in the contingencies of vesting, maturity, and the pensioner's mortality. See Golden, 227-31. Other courts have reserved jurisdiction over the parties and ordered a percentage payout upon the pension's maturity. While this method assuages the fear that the property allocation will be unfair if based on a pension which the other spouse may never in fact receive, several practical problems exist with the reserved jurisdiction method. See Kalinoski v. Kalinoski, 9 Fam.L.Rep. (BNA) 3033, 3037 (Pa. Dec. 1, 1982) (C.P. Butler Co.) ("Reserving jurisdiction has a beguiling appearance of simplicity which masks complicated problems. A present disposition is actually the more conservative approach.") We note, however, that at least one Florida court, in a 1982 decision, modified a 1971 divorce decree by ordering that alimony "shall increase automatically in an amount equal to one-half of the gross of any increase received by the husband in [military] retirement income." Mills v. Mills, 417 So.2d 298 (Fla. 1st DCA 1982).
We feel no need to belabor the varying approaches which courts have taken in valuing the benefits, because the courts have so far quite sufficiently dealt with the problem. No recitation of formulae, considered in the abstract, could capture the variety of considerations necessary in order to do equity. While reduction to present value may often best ensure an equitable distribution of property, we cannot say it would do so in every case. As in calculating an award of alimony or maintenance, "[t]he court may consider any other factor necessary to do equity and justice between the parties." § 61.08, Fla. Stat. (1985). The wealth of the parties, their future prospects, the duration of the marriage and each party's contribution to the marriage, among other factors, will bear on the question.
Mrs. Diffenderfer contends that upon remand the trial court will have to transfer to her ownership of additional assets in recognition of her share in the retirement fund. A transfer of the husband's remaining one-quarter interest in the marital home, or ownership of the beach house, or both, she argues, is necessary in order to effect a fair distribution of the marital property. We leave resolution of the question to the trial court upon remand, only noting that, because apparently the trial court did take into consideration the retirement fund, no reversal or reallocation is necessarily required. We ask only that the trial court fully consider all marital property and rule as he must in order to do equity.
Finally, the trial court may wish to reconsider its finding of the husband's special equity in the beach house. While the First District remanded for consideration of the possible application of the special equity formula set out in Landay v. Landay, 429 So.2d 1197
(Fla. 1983), we note that our decision of Duncan v.Duncan, 379 So.2d 949 (Fla. 1980), a case on substantially similar facts, may control the question.
We note, however, that the trial court may, if it chooses, grant the beach home to *Page 270 
the husband even in the absence of a "special equity" if necessary to effect an equitable distribution of marital property. The concept of "lump sum alimony" requires equal application to both parties.
In summary, we hold that a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property. While reduction to present value might best place the benefits in proper perspective for such purposes, we decline to impose any rigid rules and leave the doing of equity to the trial court. The trial court's scheme of distribution, of course, remains subject to appellate review under the "reasonableness" standard set forth in Canakaris.
We therefore remand to the First District with instructions to remand to the trial court for proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and BARKETT, JJ., concur.
SHAW, J., dissents.