530 So.2d 953 (1988)
Rosalie B. BUJARSKI, Appellant,
v.
Marcel J. BUJARSKI, Appellee.
No. 86-1958.
District Court of Appeal of Florida, Fifth District.
July 28, 1988.
Rehearing Denied September 13, 1988.
William H. Morrison, P.A., Altamonte Springs, for appellant.
Franklin T. Walden of Massey, Alper & Walden, P.A., Altamonte Springs, for appellee.
COWART, Judge.
This case involves consideration of pension benefits in a dissolution of marriage case. A majority of the judges of this district court of appeal ordered this case to be determined en banc pursuant to Rule of Appellate Procedure 9.331(a) because the case was considered of exceptional importance and an en banc hearing was necessary to maintain uniformity in the court's decisions.
At the time of dissolution, the husband was retired, going to college and receiving $31,000 annual military pension benefit income. The wife, with a master's degree, earned $43,100 annually with pension benefits to vest in four years. The trial court awarded the wife permanent periodic alimony of $200 per month. The wife appeals, arguing that under Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), the trial court erred in considering the husband's military income as a source of payment of permanent periodic alimony rather than awarding the wife one-half of the husband's retirement pension as an equitable distribution of the marital assets.[1] In Diffenderfer, *954 the Florida Supreme Court only rejected the First District's holding that a pension could not be considered marital property subject to equitable distribution but the supreme court affirmed the district court's holding that such benefits could be considered as a source of payment of permanent periodic alimony. Under Diffenderfer, the trial judge may, in his discretion, treat a pension benefit as a marital asset and make an equitable distribution of it or consider it as a source of payment of permanent periodic alimony, but not both. Here the trial court considered the husband's military pension as a source of payment of permanent periodic alimony. Applying the "reasonableness" standard of review enunciated in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), to the facts in this case, we find the trial court's treatment of the retirement benefits within its range of discretion and affirm. See Bogard v. Bogard, 490 So.2d 43 (Fla. 1986).
AFFIRMED.
DAUKSCH, ORFINGER, COBB and DANIEL, JJ., concur.
SHARP, C.J., dissents with opinion.
SHARP, Chief Judge, dissenting.
This dissolution judgment should be reversed and remanded to the trial court with directions to make an equitable distribution of the parties' marital assets to the wife. The trial court erred either by not considering the vested military pension as a marital asset, as is now required by Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), or if it did consider the pension as a marital asset (as is contended by the majority) it grossly shortchanged the wife by not allocating to her any portion of that marital asset, or making any other compensating award to her of other assets, a la Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985). See Tripp v. Tripp, 510 So.2d 1109 (Fla. 4th DCA 1987). With this decision, it appears to me that this court is taking a major step backwards from the developing law of equitable distribution in Florida. See Dwyer v. Dwyer, 513 So.2d 1325 (Fla. 2d DCA 1987); Tripp; Zipperer v. Zipperer, 508 So.2d 551 (Fla. 1st DCA 1987); Grant v. Grant, 506 So.2d 1152 (Fla. 1st DCA 1987); McCarthy v. McCarthy, 523 So.2d 1252 (Fla. 3rd DCA 1988).
The facts in this case present the classic situation for equitable distribution of a military pension as a marital asset. The parties married in 1957. The parties raised a family of three children, and during the twenty-nine years of their marriage, the husband completely earned all the rights to a military pension upon his retirement from the United States Coast Guard. The husband had retired shortly before this dissolution proceeding began.
At the time of the trial, the husband's vested pension paid him $2,618.00 monthly, for a total of $31,416.00 per year. He also received in excess of $300.00 per month, V.A. benefits towards his education, and other fringe benefits from the military, such as shopping privileges at the commissary and PX, and Champus. At the time of trial, the husband was only six months away from obtaining a college degree in computer science. The evidence suggested he could expect to obtain a job paying from $17,000 to $30,000.00, for an entry level position. The trial judge found both his health and earning potential to be "excellent."
The trial judge also found that during the marriage the wife was a good mother and dutiful military spouse. She moved some ten times across the country, raised the children alone while the husband was on frequent extended sea duty, held offices in various service wives' clubs, and did her best to support the husband's military career. He retired as a commander, having begun as an enlisted man.
After the children were in school, the wife slowly began to acquire a higher education, shifting courses and schools, due to the parties' military transfers. She obtained a Masters Degree in psychology and *955 for the last six years of the marriage was employed by AT & T. Her first year's salary was $17,000.00; she was earning $43,000.00 per year at the time of the dissolution.
However, the wife has no vested pension rights from AT & T, and her continued employment was not assured. The trial court found she has significant chronic health problems: high blood pressure, diabetes, and a degenerative disk in her spine. If she works for AT & T another four years, she will be entitled to some vested pension amounts, but as the trial judge noted, she would have to work many more years "in order to have any significant income."
At the time of the dissolution proceeding, the parties' primary marital assets were their marital home, and the military pension. The evidence also showed that the husband abruptly walked out on the wife for another, much younger woman, leaving the wife with the full financial responsibility for the marital residence. In sum, if fault is a factor to justify inequitable distribution of marital assets, see Wood v. Wood, 490 So.2d 248 (Fla. 3rd DCA 1986); Tuller v. Tuller, 469 So.2d 212 (Fla. 5th DCA 1985), there was no basis for shortchanging the wife in this case. In fact, the trial court expressly found:
The wife made a substantial contribution to the marriage and to the husband's 28 year military career which occurred during the 29 year marriage. Consequently she should share in the fruits of the military retirement which the husband will enjoy for the remainder of his natural life.
Despite these undisputed facts and findings, the trial court made a grossly unfair award of marital assets. It split the proceeds received by the parties from the sale of the marital residence roughly equally ($33,000.00 to each), after crediting the wife with mortgage and other payments she had made on the house, to cover the husband's joint obligations. But it failed to award any sums under the vested pension to the wife, or to compensate her with an award of another asset.
The military pension in this case is clearly a substantial, valuable asset. Without regard to cost of living increases, which the husband will be entitled to receive pursuant to this pension based on Federal Estate and Gift Tax Regulations, the present value of an annuity paying $31,416.00 per year, monthly, for the life of a 51 year old is $275,356.00.[1] Or, if capitalized at 10% per annum pursuant to simple accounting principles, the pension is worth $310,000.00. In effect, by this judgment the trial court distributed to the husband $308,356.00 of the marital assets (using the lower figure of $275,356.00) and $33,000.00 to the wife, roughly a ninety percent to ten percent distribution. There is simply no rhyme or reason for such an inequitable division. See Farkas v. Farkas, 452 So.2d 963 (Fla. 3rd DCA 1984) (90% award of marital assets to wife, 10% to husband reversed); Sanders v. Sanders, 492 So.2d 705 (Fla. 1st DCA 1986) (72% of marital assets to husband, 18% to wife reversed). Mederos-Sibila v. Sibila, 525 So.2d 923 (Fla. 3rd DCA 1988), (90% award of marital assets to husband reversed); Carr v. Carr, 522 So.2d 880 (Fla. 1st DCA 1988) (79% award to husband and 21% to wife reversed).
The court awarded the wife $200.00 per month permanent alimony, which it expressly stated was "minimal," reserving jurisdiction to reconsider the amount of alimony in the future.[2] However, as the Florida Supreme Court recognized in Diffenderfer, the outright distribution of a marital asset to a deserving spouse is a *956 much more preferable way to do equity between the parties than the award of permanent periodic alimony.
Alimony terminates on the death of a spouse, or if the wife elects to remarry. The husband in this case is so eager to remarry, he has already purchased his girlfriend a valuable engagement ring. In contrast, why should the wife, who is admittedly entitled to a share of this asset, be required to lead a life of celibacy,[3] or forfeit her tenuous claim to the pension, structured as it is in terms of minimal periodic alimony?
Further, pursuant to this judgment and the necessity to prove change of circumstances, in order for the wife to obtain anything other than a minimal amount from the pension, she may have to suffer loss of her job or experience disabling health problems. But, the husband's pension income will continue without regard to whether he works another day, remarries, or becomes ill. In all fairness, an award of alimony is not equivalent to an equitable division of marital assets. Diffenderfer, 491 So.2d at 268.
The majority suggests that the disparity in the parties' current incomes is the reason why this judgment meets the Canakaris test. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). But that requires assumptions the record and the trial judge's findings clearly refute. The husband's lack of current earned income is only temporary. In an additional six months, he will be able to earn at least $17,000.00 in an entry level position. Thereafter, his income earning potential is "great," equal to, if not better than, the wife's. Under these circumstances, it was an abuse of discretion not to award the wife some portion of the military pension in her own right.
NOTES
[1] An award to the wife of one-half of the $31,000 annual pension benefits would leave the husband with one-half of the pension or $15,500 annual income while adding one-half of the pension or $15,500 to the wife's earning of $43,100, giving her a total annual income of $58,600 plus the expectation of one hundred percent of her pension when it vests and matures.
[1] See, 3 Federal Tax Regulations § 20.2031-7(b)(2) & (f) (West 1988). These tables employ a 10% interest factor. In effect since 1983, they may be out of date. However they are referenced in this dissent simply to illustrate that the vested pension in this case has substantial value. Other methods of valuation, such as reference to insurance industry tables, may be more accurate.
[2] An award of lump sum alimony to compensate the wife might be appropriate since the only other asset of the parties was the marital residence. See, Turner v. Turner, 529 So.2d 1138 (Fla. 1st DCA 1988) (lump sum alimony justified where, inter alia, special reason exists).
[3] See, Lowry v. Lowry, 512 So.2d 1142 (Fla. 5th DCA 1987).