575 So.2d 738 (1991)
Maria I. HALLMAN, Appellant,
v.
Kenneth HALLMAN, Jr., Appellee.
No. 89-1285.
District Court of Appeal of Florida, Fifth District.
February 28, 1991.
Fernando M. Palacios, Melbourne, for appellant.
William G. Norwich of Gralla and Norwich, Cocoa Beach, for appellee.
COBB, Judge.
We have considered this case En Banc in order to maintain consistency with a prior opinion of this court. See Bujarski v. Bujarski, 530 So.2d 953 (Fla. 5th DCA), review denied, 537 So.2d 568 (Fla. 1988).
The appellant, Maria Hallman, challenges the trial court's award of primary residential custody of the parties' two minor children (one of whom required special tutoring) to the father, the equitable distribution of the marital assets, and the trial court's denial of alimony. We affirm in all respects.
In regard to the award of primary residential custody of the minor children to the father, this was a matter within the trial court's broad discretion, and the instant record does not provide a basis to conclude that such discretion was breached. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
*739 In determining a fair distribution of the parties' marital assets, the trial court allocated $15,000.00 in credit card debts to the husband pursuant to section 61.075, Florida Statutes (1987), which requires the distribution of liabilities as well as assets. Subsection (1)(g) of that section provides that the court must consider, as a relevant factor, "the contribution of each spouse to the acquisition, enhancement and the production of income ... or the incurring of liabilities to both the marital assets and the non-marital assets of the parties."
The record establishes that the marital home of the parties was sold at a loss prior to entry of the final judgment. The husband was allocated some $18,720.00 in debts (including an outstanding obligation of $3,720.00 on the automobile he received) and ordered to pay $2,500.00 of the wife's attorney's fees, a total in excess of $21,000.00 in obligations. In return, he received the right to an accrued pension, valued at the time of trial at approximately $22,000.00. He was also named primary caretaker for the parties' two minor children.
We have frequently held that an approximate fifty/fifty split of marital assets is equitable. Bain v. Bain, 553 So.2d 1389 (Fla. 5th DCA 1990); Moore v. Moore, 543 So.2d 252 (Fla. 5th DCA 1989); Green v. Green, 542 So.2d 466, 467 n. 2 (Fla. 5th DCA 1989); Poe v. Poe, 522 So.2d 50 (Fla. 5th DCA 1988); Laman v. Laman, 490 So.2d 985 (Fla. 5th DCA), review denied, 500 So.2d 544 (Fla. 1986); Ente v. Ente, 442 So.2d 232 (Fla. 5th DCA 1983); Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981). Yet, the appellant terms the instant distribution "inequitable" because of the husband's superior earning ability. That ability, however, is not a factor for purposes of equitable distribution of assets. As we pointed out in Severs v. Severs, 426 So.2d 992 (Fla. 5th DCA 1983), the law does not (and cannot consistent with the United States Constitution) give one spouse a vested interest in the other spouse's future earning ability for purposes of distribution of marital property.
The appellant also argues that she was not shown to have dissipated marital assets or income, yet the record shows that she could give no clear accounting for monies she received from the husband to pay family bills. Those unpaid bills ultimately resulted in the $15,000.00 deficit allocated by the trial court to the husband. The appellant states that the husband ceased putting his salary in a joint account with the wife and, instead, deposited $1,050.00 per month into a C & S bank deposit in Charleston, South Carolina; the evidence is that only one-half of the salary was deposited in Charleston, and even that account was used by the husband to pay delinquent marital bills.
In the instant case, the trial court considered the vested pension rights of the husband as a marital asset which was offset by the marital liabilities imposed upon him. This is entirely consistent with the applicable statute, the holding of the Florida Supreme Court in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), and the prior en banc holding of this court in Bujarski. No case from any court has ever held that one spouse must automatically be awarded some portion of the other spouse's pension benefits, irrespective of all other equities and the apportionment of other assets and liabilities. Such a myopic approach to equitable distribution of pension benefits and joint liabilities would conflict not only with Diffenderfer and Bujarski, but with the admonition in Canakaris that the trial court has broad discretionary power to utilize various and interrelated remedies to achieve an overall equitable result. Canakaris at 1202.
The trial court's decision not to award alimony is also affirmed. Contrary to the appellant's contention, the instant record does not establish that the wife, who is only 36 years old, has no present or future ability to improve her earning capacity. She testified she made $150.00 to $175.00 a week at a restaurant in a local mall, although at the time of trial below she worked only part-time as a maid. It is apparent her financial status would markedly improve if she were to work full-time.
*740 It is also apparent that another consideration of the trial judge was the financial burden and responsibility imposed upon the husband to establish and maintain a primary residence for the parties' two minor children. The marital residence had been sold and the husband was required to lease housing facilities for his family at an expense of approximately $700.00 per month. He also had to pay the costs of a tutor for the minor daughter, as well as utilities, food and other essentials for the parties' two children.
AFFIRMED.
DAUKSCH, COWART, GOSHORN, HARRIS and PETERSON, JJ., concur.
DIAMANTIS, J., concurs in part and dissents in part with opinion with which W. SHARP and GRIFFIN, JJ., concur.
W. SHARP, J., dissents in part and concurs in part with opinion with which GRIFFIN, J., concurs.
GRIFFIN, J., dissents with opinion with which W. SHARP, J., concurs.
DIAMANTIS, Judge, concurring in part and dissenting in part.
I agree the custody award to the father should be affirmed as the instant record does not demonstrate an abuse of discretion by the trial court. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Vena v. Vena, 556 So.2d 436 (Fla. 5th DCA 1990). I also recognize the flexibility of the trial court in devising this scheme of equitable distribution, see Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986),[1] and in considering the husband's pension funds as a marital asset which was offset by the marital liabilities imposed upon him. Although I may have made a different distribution had I been the trial judge, I cannot say the trial judge abused his discretion in this regard.
I believe the trial court erred, however, in failing to reserve jurisdiction on the issue of alimony. The record demonstrates that the wife, Maria, is 36 years old, has an eighth grade education, has difficulty with the English language, has medical problems with her back and with an ulcer, and is working part time as a maid earning a net monthly salary of $416.86, less $100.00 per month for child support (the award of child support is not contested in this appeal). The husband, Kenneth, completed high school and, as a merchant seaman, has progressed to the level of Third Officer and has qualified and served as a Second Officer. He earned a yearly salary of $61,000 in 1986, $51,000 in 1987 and anticipated earning $26,000 in 1988 with a net monthly salary of $2,368.00. Given this disparity in earning capacity as well as Maria's health problems, her lack of education, her age, and the standard of living enjoyed during the 14 years of marriage, I believe the record establishes that Maria has a need for some form of spousal support. In this regard, the trial court's award of attorney's fees to Maria impliedly recognizes her need for financial support. However, the record is equally clear that Kenneth does not have the present ability to pay such support, though he may have the ability to do so in the future as a result of some substantial change in circumstances which would further increase the disparity in their respective financial positions.
Consequently, I would affirm as to the awards of child custody and equitable distribution, but reverse and remand the case back to the trial court to reserve jurisdiction on the issue of alimony.
W. SHARP and GRIFFIN, JJ., concur.
W. SHARP, Judge, dissenting in part and concurring in part.
I agree the custody award should be affirmed. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Eddy v. Napier, 558 So.2d 199 (Fla. 2d DCA 1990); Vena v. Vena, 556 So.2d 436 (Fla. 5th DCA 1990); Massis v. Massis, 551 So.2d 587 (Fla. 1st DCA 1989). However, I think the trial court breached its discretion by failing to award the wife any substantial portion of the marital assets (other than a 1981 Mercury station wagon and a few sticks of *741 furniture) and no alimony. The record shows that Maria and Kenneth married in 1974 in Spain. Maria was twenty years old, and had only an eighth grade education. She has difficulty with the English language, and has not furthered her education since coming to the United States in 1975. Kenneth completed high school, and through his career as a merchant seaman has taken courses which have allowed him to progress to the status of a Third Officer, and to have top security clearance. He is qualified and has served as a Second Officer.
The parties acquired far more debts than assets. A marital residence owned jointly by the parties was sold while the dissolution was pending, but its sale produced little, if any, equity. The parties were living in a rented home at the date of the dissolution hearing, and the items owned jointly were their clothing, two cars, and furniture. However, Kenneth testified he owned a vested interest in a pension plan provided by his employer, which was worth $20,000 at the time of the hearing. All (except for four months) had been earned during the parties' marriage. He also had a thrift savings plan worth $2,200.
In 1986, Kenneth earned $61,000 per year and in 1987, he earned $51,000. However, in 1988 he asked his employer not to assign him out of the country because of his marital problems. In the current year, he anticipated receiving a net salary of only $26,000. Kenneth's amended financial affidavit disclosed a monthly "net" salary (excluding federal income tax and social security) of $2,368 per month.
Maria was a housewife during most of the parties' fourteen-year marriage. During the last year prior to the hearing, Kenneth ceased putting any of his salary into joint accounts with Maria. Rather, he deposited $1,050 per month into a South Carolina bank account. Maria had no cash and she ran up debts on credit cards. She also took a part-time job as a maid. She was currently earning a net (excluding federal income taxes and social security) of $416.86 per month. Maria has no present or future ability to improve her earning capacity.
The final judgment required Maria to pay two small credit card accounts in her own name ($160) and ordered Kenneth to pay the others ($15,000). It awarded her the older car, which required no car payments and minuscule furnishings so she could move to an apartment. It also awarded Maria $2,500 attorney's fees but required her to pay $100 per month child support after she established living quarters for herself outside the rented family residence. This leaves her with a net income of $316.86 per month.
Although there was some evidence in the record of marital misconduct on the part of Maria, there was similar evidence against Kenneth, and the trial court made no finding on that issue. Neither party was shown to have dissipated marital assets or income. Thus, fault, if it were established here against either or both, would not provide a basis to completely deny alimony,[1] or to make an inequitable distribution of marital assets. Noah v. Noah, 491 So.2d 1124 (Fla. 1986); Pardue v. Pardue, 518 So.2d 954 (Fla. 1st DCA 1988); Green v. Green, 501 So.2d 1306 (Fla. 4th DCA 1986), rev. denied, 513 So.2d 1061 (Fla. 1987); Crapps v. Crapps, 501 So.2d 661 (Fla. 1st DCA), rev. denied, 511 So.2d 297 (Fla. 1987).
Nor do I think the judgment can be supported because Kenneth must pay the $15,000 in credit card debts. Kenneth clearly has a far superior earning capacity than does Maria, even if his salary remains at one quarter or one third of what he previously earned. His income was always the primary support of the family, and credit was extended to them because of it. Maria testified that most of the $15,000 debt was incurred for family expenses and furnishing the marital home they were forced to sell. Her testimony was not refuted.
In addition, this case is not controlled by section 61.075(1)(g), Florida Statutes (Supp. 1988), which requires the court to consider *742 apportionment of marital liabilities as well as assets in making equitable distribution. This lawsuit was filed on June 22, 1988 and the husband's counterpetition was filed July 22, 1988. The new equitable distribution statute applies only to actions commenced after its effective date: October 1, 1988.
But, even if section 61.075(1)(g) were applicable in this case, I do not think it was intended to approve a dollar-for-dollar trade of assets for liabilities in a case such as this where one spouse has a vastly superior earning ability and the trade off reduces the other spouse's share of the marital assets to zero. Surely the payment of debt is not equivalent to an interest in a pension which will pay a stream of income in the future. Here, the parties were married for about fifteen years and during that time (except for a few months) Kenneth was building toward retirement. Kenneth testified that his retirement will be approximately 56 percent of his base salary. If Kenneth were to retire at his present base salary of $26,000, he would receive $14,560 per year.[2] Thus one year of his retirement is roughly equal to the joint debts he has to pay now. Kenneth, however, has the benefit of the remaining years of his pension while Maria has no retirement income. Section 61.075 hopefully was not designed to sanction such inequality.
In my view, there is no valid justification in this record and no express finding by the trial judge to justify such an inequitable result. The trial court failed to equitably distribute some portion of the $22,000 vested pension and savings funds to Maria, or to make any compensating award of some nature to her. The pension and savings were earned almost entirely during the marriage, and they are clearly marital assets. Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986).
I agree with Maria that the judgment left her in a state close to abject poverty. To expect she can acquire and furnish a rental unit, feed herself, put gas in the tank of her car so she can drive to work, and meet other necessary living expenses on $316.86 per month with no cash reserves at all, is completely unrealistic. I can only conclude such a lopsided judgment is either punitive or unfair in the extreme under Canakaris. Some award to Maria should have been made, to be consistent with our prior cases in this district. See Bain v. Bain, 553 So.2d 1389 (Fla. 5th DCA 1990); Poe v. Poe, 522 So.2d 50 (Fla. 5th DCA 1988); Womble v. Womble, 521 So.2d 149 (Fla. 5th DCA), rev. denied, 528 So.2d 1184 (Fla. 1988); Szemborski v. Szemborski, 512 So.2d 987 (Fla. 5th DCA 1987), rev. denied, 520 So.2d 586 (Fla. 1988); Laman v. Laman, 490 So.2d 985 (Fla. 5th DCA), rev. denied, 500 So.2d 544 (Fla. 1986); Rico v. Rico, 487 So.2d 1161 (Fla. 5th DCA 1986); G'Sell v. G'Sell, 390 So.2d 1196 (Fla. 5th DCA 1980); Cowan v. Cowan, 389 So.2d 1187 (Fla. 5th DCA 1980), rev. denied, 397 So.2d 777 (Fla. 1981); Bradley v. Bradley, 385 So.2d 101 (Fla. 5th DCA), rev. denied, 392 So.2d 1372 (Fla. 1980).
GRIFFIN, J., concurs.
GRIFFIN, Judge, dissenting.
Husband and wife were married in Cadiz, Spain 15 years before the dissolution. Wife is a 36 year old (green card) Spanish citizen with the equivalent of an elementary school education. She speaks broken English and has difficulty understanding English. She has a variety of health problems, including a bleeding ulcer and a bad back. For most of the marriage, she was a housewife; the couple had two children, 13 and 9 years of age. Husband concedes she "was never a good candidate to achieve a high employment opportunity." Apart from a five to six month stint working for "Chicken Gourmet" in the local mall, her only employment was as a housekeeper at Patrick Air Force Base earning $513 per month for the two years prior to entry of final judgment.
During their entire marriage husband was a merchant seaman, a civil service employee with Military Sealift Command Atlantic. He held the rank of Third Officer, earning, at the time of the divorce, *743 approximately $3,200 per month ($38,688 annually). In 1986 he had earned approximately $61,000 and in 1987, $51,000. His income dropped in 1988 after he asked not to be assigned to duty that would require him to leave the country.
On the husband's financial affidavit, he identified the following assets:

 1981 Mercury $ 500.00
 1985 Isuzu 4,500.00
 Furniture and household 4,000.00

Not shown on his affidavit but testified to during examination by wife's counsel were:

 Vested Pension $20,000.00
 Thrift Plan 2,200.00
 Bank Account[1] 900.00

Accepting the husband's valuations, therefore, marital assets totalled approximately $32,100.
In the final judgment, the husband was ordered to pay $15,000 in marital debts. In addition, he was ordered to pay the parties' estimated $1,400 tax liability for 1988. He was awarded custody of the children.
The wife's "equitable distribution" consisted of the 1981 Mercury, valued at $500, $50 in cash to purchase kitchen utensils, one TV set, one bed, one dresser, one night stand and pictures and ceramics from Spain. She was awarded no alimony. She was ordered to pay $160 in credit card bills and $100 per month child support. The husband was ordered to pay $2,500 of the wife's attorney's fees.
I concede the record is not clear as to why this couple had accrued this $15,000 in marital debt. Appellant contended it was attributable to the $15,000 the husband had deposited in his separate South Carolina bank account. However, husband produced no records of the disbursements from the account and wife evidently failed to obtain them through discovery. Another explanation for this debt, in part, may be the husband's decision to take only domestic work assignments with the concomitant $12,500 salary decrease. Or it could have been, as the majority implies, that the wife's inability to account for the expenditure of every dollar of the $1,050 allotment she got from her husband indicated she was wasting money. Even if the entire debt was validly charged against the marital assets, the "distribution" made by the trial court of the balance of the approximately $16,000 in marital assets was an abuse of discretion and the failure to award alimony, under these facts, an equally clear error.
I cannot see how Bujarski v. Bujarski has anything to do with this case, much less require en banc consideration to maintain consistency with Bujarski. The holding in Bujarski was simply that a trial judge, in his discretion, may treat a pension as a marital asset and may either make an equitable distribution of it or consider it a source of payment of permanent periodic alimony, but he may not do both.[2] This case does not present such a problem at all; indeed, given that the wife's equitable distribution in this case appears to have a value of less than $1,000, it is arguable the trial court did neither. Rather than a Bujarski issue, this is a classic Canakaris v. Canakaris[3] "reasonableness" case. Applying the Canakaris standard to the record in this case, I can find no logic or justification for the result[4] reached by the trial court. Nor is any identified in the majority opinion. Moreover, the decision of the en banc majority holds that the attorneys' fees award to the spouse is properly taken into account in dividing the marital assets. It is my understanding that the reverse is true: the amount of equitably distributed assets is one of the factors to *744 be taken into account in determining whether an award of fees is appropriate. Nisbeth v. Nisbeth, 568 So.2d 461 (Fla. 3d DCA 1990); Johnson v. Johnson, 560 So.2d 1372 (Fla. 5th DCA 1990); Gibbons v. Gibbons, 560 So.2d 392 (Fla. 4th DCA 1990). Inclusion of the fees award may be necessary in this case to help justify the disparity in distribution but it doesn't help enough to outweigh the mischief it will cause. I would reverse.
W. SHARP, J., concurs.
NOTES
[1] See also § 61.075(1)(g), Fla. Stat. (Supp. 1988).
[1] Section 61.08(1), Florida Statutes (1987), makes adultery of either spouse a relevant consideration.
[2] Kenneth testified that he could retire after thirty years of service.
[1] According to the record, husband set up this separate account at a South Carolina bank in his own name in February, 1988. The account had $6,250 as of July 14, 1988 and he deposited $1,050 of his net pay in that account for each of the nine months thereafter. He produced no later records of this account (he did not, "as a normal practice" retain his monthly statements) or disbursements from it but claimed he had used the $15,000 he had put into the account (and his IRA of $1,516.53) for "payment of bills."
[2] The court might just as aptly have cited Calleja v. State, 562 So.2d 395 (Fla. 5th DCA 1990).
[3] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
[4] Id. at 1203.