386 So.2d 14 (1980)
Margaret Miller JOHNSON, Appellant,
v.
Bernard A. JOHNSON, Appellee.
No. MM-191/T1-24.
District Court of Appeal of Florida, Fifth District.
June 11, 1980.
Rehearing Denied July 24, 1980.
*15 James G. Hahl of Raymond, Wilson, Conway, Barr & Burrows, Daytona Beach, for appellant.
Garrett L. Briggs of Adams & Briggs, Daytona Beach, for appellee.
SHARP, Judge.
The former husband and wife involved in this appeal were divorced in 1965, in Florida. The final judgment incorporated a "Property Settlement and Agreement" executed by the parties and their attorneys. Pursuant to this agreement each party received certain personal property. They agreed to refinance the marital home and use the proceeds to pay the debt on an automobile to be transferred to the wife and to pay off two mortgages on the home. The wife received the title to the home. The husband agreed to pay the mortgage and taxes on the house, and child support for the three minor children. He also agreed to pay the wife $350.00 per month as permanent alimony. In 1978 Bernard petitioned for termination of his alimony obligation and his duty to pay the mortgage and tax payments on the house, because the three children were in college or no longer living with the wife, and Margaret was earning an income sufficient for her own support.
The trial court found that Bernard's undertaking to pay the taxes and mortgage on the home was part of a property settlement agreement not modifiable under Florida law. Fowler v. Fowler, 112 So.2d 411 (Fla. 1st DCA 1959). We agree with this conclusion. However, the trial court found that the periodic alimony provision was modifiable.[1] It terminated the *16 husband's alimony obligation, based on a finding that the wife substantially increased her income since the dissolution and had become self-supporting. The husband argues that because it does not appear that the former wife gave up any property rights in exchange for the alimony, this obligation is modifiable. Coffin v. Coffin, 368 So.2d 105 (Fla. 4th DCA 1979); Goerlich v. Goerlich, 358 So.2d 895 (Fla. 2d DCA 1978). We do not need to reach this question in this case,[2] because we find there was no substantial change in the circumstances or the financial abilities of either party, and it was therefore an abuse of discretion to terminate the permanent alimony obligation.
At the time of the divorce the wife had been a housewife during the 20 years of their marriage. She had a college education but had not worked outside the home. During the marriage Bernard built a successful career as a salesman. He was frequently away from home, and Margaret cared for the children and the home, and supported his success in his career. They enjoyed a comfortable life style, which included membership in a country club, vacations in North Carolina and the "islands", nice clothing for the wife, and an "enviable" social life.
Within a few months after the divorce, the wife took a part-time job as a clerk. Both parties apparently contemplated that it would be necessary for the wife to work outside the home after the divorce in order to meet her normal living expenses. She also attended school part-time, and managed to earn her certification as a teacher and a librarian. She inherited some funds from her parents, but those funds were largely exhausted at the time of the modification proceedings. Margaret was never again able to achieve the standard of living she enjoyed during her marriage. She could not afford to paint the house or repair or replace the appliances, such as the dryer, refrigerator, stove, hot water heater, and furnace. She was driving a 1974 V.W. Beetle and had the same furniture in her home obtained during the marriage. She had a job as a librarian at $12,500 a year, but she lived very modestly. She had sought no increase in alimony or child support even though inflation and increased cost of living occurred over the 13 year period because she thought the agreement was not modifiable.
In contrast the evidence showed that Bernard was living very comfortably, even luxuriously by Margaret's standards. His income approximated $60,000 per year. His second wife was also employed and he had no dependents. Bernard lived in an oceanfront home in Ormond Beach overlooking the Oceanside Country Club. He valued it at $175,000. It was furnished with antiques and new furniture worth $15,000. He and his wife enjoyed the country club and their own private pool at home. His net worth exceeded $200,000. He and his second wife were driving new Lincoln Continentals.
Clearly a permanent alimony award to Margaret was proper in the initial proceedings. McAllister v. McAllister, 345 So.2d 352 (Fla. 4th DCA 1977); Gordon v. Gordon, 335 So.2d 321 (Fla. 4th DCA 1976); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). Whether or not a sufficient change in circumstances occurred in this case requires the consideration of the totality of the parties' circumstances. Taplin v. Taplin, 341 So.2d 1064 (Fla. 3d DCA 1977); Freeland v. Purcifull, 347 So.2d 726 (Fla. 2d DCA 1977). Where the alimony obligation is based on an agreement, a heavier burden is on the applicant to establish the change as sufficient.[3] The lower court in this case disregarded the affluent circumstances of the former husband, and the situation established *17 by the record that the former wife was living far below the standard of living she enjoyed during marriage and far below the former husband's current standard of living. The lower court relied solely upon the fact that the former wife had obtained a full-time job paying $12,500 per year. Had she not done so, her living standard would have been near the "poverty level."[4] The divorced wife of a long term marriage who is awarded permanent alimony should not be faced with the prospect of losing her right to alimony if she becomes better educated, or if she earns a modest income as in this case. Mosher v. Mosher, 321 So.2d 450 (Fla. 2d DCA 1975); see Herbert v. Herbert, 304 So.2d 465 (Fla. 4th DCA 1974); McAllister v. McAllister, 345 So.2d 352 (Fla. 4th DCA 1977). This premise is even stronger where the parties agreed to the permanent alimony award initially,[5] and where both contemplated it would be necessary for the former wife to become gainfully employed after the divorce.
REVERSED in part; AFFIRMED in part.
FRANK D. UPCHURCH, Jr., J., concurs.
COBB, J., concurs specially.
COBB, Judge, concurring specially.
I concur in the result reached by the majority on the basis of Turner v. Turner, supra, fn. 2.
NOTES
[1] The parties' agreement provided (in part):

"9. In addition to the above, the Husband agrees to pay to the Wife as and for alimony the sum of three hundred fifty dollars ($350.00) per month and to continue said monthly payments so long as the Wife shall live or until she shall remarry.
.....
16. This agreement is intended to be a complete property settlement agreement and as the same provides for the distribution of the property owned by the parties hereto or controlled by them, it is not subject to modification or recision."
[2] See Turner v. Turner, 383 So.2d 700, (Fla. 4th DCA 1980).
[3] Tsavaris v. Tsavaris, 307 So.2d 845 (Fla. 2d DCA 1975); Coe v. Coe, 352 So.2d 559 (Fla. 2d DCA 1977); Hagen v. Hagen, 308 So.2d 41 (Fla. 3d DCA 1975).
[4] The poverty level in 1978 for a woman living in the city was $3,190. Newspaper Enterprise Association, Inc., The World Almanac, p. 201 (1980).
[5] See Turner v. Turner, 383 So.2d 700, (Fla. 4th DCA 1980).