609 So.2d 74 (1992)
Linda P. JACQUES, Appellant,
v.
Jeffrey M. JACQUES, Appellee.
No. 92-245.
District Court of Appeal of Florida, First District.
November 19, 1992.
Rehearing Denied January 11, 1993.
Elaine N. Duggar of Gardner, Shelfer & Duggar, P.A., Tallahassee, for appellant.
Kristin Adamson and Jerome M. Novey of Novey & Mendelson, Tallahassee, for appellee.
ERVIN, Judge.
Appellant, Linda Jacques, appeals an order of marital dissolution, contending that the trial court erred in awarding alimony to her based upon appellee's salary under a nine-month teaching contract, rather than including summer employment; in failing to require the husband, Jeffrey Jacques, to provide for appellant's health insurance; in requiring husband to maintain only $60,000, rather than $100,000, of life insurance for the wife's benefit; and in awarding her only $1,500 in attorney's fees. We reverse and remand for further findings.
The parties were married approximately 24 years at the time of dissolution and have no minor children. Appellant does not work, having suffered variously from Chronic Fatigue Syndrome, adrenal insufficiency, Post-Traumatic Stress Disorder, and environmental illness since graduating from college. Environmental specialist Dr. Allan Lieberman and clinical psychologist Dr. Joyce Ducas each testified that appellant is unable to work and that neither knew of any way to improve or change appellant's condition. Appellee is a tenured professor at Florida A & M University, earning $45,616 under a nine-month contract, and, although he obtained summer employment during the summers of 1989 and 1990, the record discloses that the summer position would not in all probability be available in the future because of budget shortfalls.
In its final judgment, the court concluded that the marriage was irretrievably broken and divided the parties' marital assets. It also directed the former husband to pay permanent alimony to appellant in the amount of $1,500 per month; to maintain the former wife as beneficiary of no less than $60,000 of the proceeds from appellant's life insurance policy, as long as his alimony obligation continues; and to pay $1,500 of appellant's attorney's fees.
The difficulty that we have with the first two issues raised in appellant's brief is that the lower court's reasons for the alimony award are not contained in the trial court's amended final judgment of dissolution of marriage. Instead, appellant relies in large measure upon oral statements the trial judge made during the dissolution proceeding. In support of her arguments that the trial court erred in awarding the amount of alimony based on husband's salary under a nine-month teaching contract and without considering the wife's medical expenses, the appellant refers to the trial judge's oral comments stating that if the husband obtained summer employment, such would be *75 to his benefit and not the wife's, and that the court would not require husband to be responsible for any of appellant's medical costs. As already observed, none of these statements was reduced to writing in the trial court's final judgment. Even if they had been, we do not consider that they would be binding on any future petition for modification brought by either party. See Allison v. Allison, 554 So.2d 1196 (Fla. 1st DCA 1989) (possibility, at time of dissolution, that enactment of new tax law could reduce husband's income did not constitute knowledge that there would be substantial change in circumstances). Whether the husband's income and/or the cost of the wife's medical insurance will substantially increase is speculative at this time.
Appellant also refers to certain oral statements made by the trial judge pertaining to extraordinary contributions the husband made in behalf of his wife during the term of their marriage, causing a sacrifice of his own career opportunities. Again, such statements were not reduced to writing, and we refuse to indulge in any presumption that the court's reason, orally stated, provided the basis for the amount of alimony awarded.
Because the lower court's order lacks written findings of fact to support the alimony award, we are unable to reach any reasoned decision in regard to whether any of the points appellant raised requires reversal on the merits, including issues three and four. In failing to reduce its reasons to writing in the final judgment, the trial court violated that portion of Section 61.08(1), Florida Statutes (1991), providing: "In all dissolution actions, the court shall include findings of fact relevant to the factors enumerated in subsection (2) supporting an award or denial of alimony."[1] Without these critical findings,[2] we are unable to discern the trial court's determination as to the wife's needs and the husband's ability to provide for such needs.
As Chief Justice, then Judge, Barkett stated, in regard to the requirement of written reasons for departure from sentencing guidelines:
The alternative of allowing oral pronouncements to satisfy the requirement for a written statement is fraught with disadvantages which, in our judgment, compel the written reasons.
First, it is very possible, and in many instances very probable, that the "reasons for departure" plucked from the record by an appellate court might not have been the reasons chosen by the trial judge were he or she required to put them in writing. Much is said at hearings by many trial judges which is intentionally discarded by them after due consideration and is deliberately omitted in their written orders.
Second, an absence of written findings necessarily forces the appellate courts to delve through sometimes lengthy colloquies in expensive transcripts to search for the reasons utilized by the trial courts. In R.B.S. v. Capri, the court noted:
It is not the function of an appellate court to cull the underlying record in an effort to locate findings and underlying reasons which would support the order. The statute should be complied with in the future.
384 So.2d 692 at 696-697. [(Fla. 3d DCA 1980)].
Lastly, the development of the law would best be served by requiring the precise and considered reasons which would be more likely to occur in a written statement than those tossed out orally in a dialogue at a hectic sentencing hearing... . For the first time in this state, a body of law is being developed regarding considerations which may or may not be appropriate in sentencing criminal defendants. This effort would best be served by requiring the thoughtful effort which "a written statement *76 providing clear and convincing reasons" would produce. This, in turn, should provide a more precise, thoughtful, and meaningful review which ultimately will result in the development of better law.
Boynton v. State, 473 So.2d 703, 706-07 (Fla. 4th DCA), decision approved, 478 So.2d 351 (Fla. 1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986).
Although the above comments applied to review of reasons for departures from guideline sentences pursuant to Florida Rule of Criminal Procedure 3.701(d)(11), we believe the reasons Chief Justice Barkett advanced in Boynton are equally applicable to the review of final judgments awarding alimony in marital dissolution proceedings. In both instances, written findings facilitate appellate review and should promote "a more ... meaningful review which ultimately will result in the development of better law." Boynton, 473 So.2d at 707.
REVERSED and REMANDED with directions that the trial court enter written findings supporting its reasons for the alimony award entered.
ZEHMER J., concurs.
BARFIELD, J., concurs in result only with written opinion.
BARFIELD, Judge, concurring.
I concur in the result only. While written findings of fact are always helpful, I believe I could reach a "reasoned decision" in this case absent written findings. However, as the majority opinion points out, written findings are now required by Florida law.
NOTES
[1] This provision took effect July 1, 1991; appellee filed his petition for dissolution July 2, 1991. Ch. 91-246, §§ 3, 9, Laws of Fla.
[2] The findings enumerated in subsection (2) include the parties' standard of living during the marriage, the financial resources of each party, their sources of income, and their contributions to the marriage.