622 So.2d 1033 (1993)
Edward M. KENNEDY, Appellant,
v.
Mary Ann KENNEDY, Appellee.
No. 91-1869.
District Court of Appeal of Florida, Fifth District.
July 23, 1993.
Rehearing Denied September 3, 1993.
Charles W. Willits, Orlando, for appellant.
B. Paul Katz, of Chiumento & Katz, P.A., Palm Coast, for appellee.
*1034 EN BANC
PER CURIAM.
The issue in this case, simply stated, is whether the trial court erred in its decision to equalize the parties' incomes under the facts of this case. We find that it did and reverse.
The record in the instant case shows that the trial judge felt that consideration of the first two factors enumerated in section 61.08(2)  i.e., the standard of living established during the marriage and the duration of the marriage  required that he equalize the incomes of the parties, not simply as a discretionary matter but as a legally obligatory one. In other words, once the trial court determined this to be a long term marriage, he automatically divided the incomes so as to allow each party the nearest equivalent to the marital standard of living. This approach completely ignores other statutory factors such as the ages and physical conditions of the parties, and the contribution of each party to the marriage.[1] While Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), allowed broad discretion to the trial judge in domestic matters, it specifically did not require the equalization of the financial position of the parties. See Canakaris at 1204. The Florida Legislature has now recognized factors other than the two utilized herein by the trial court, and has required that "all relevant economic factors" be considered and that findings of fact be made in regard thereto. The trial judge in this case did not do that. We find, therefore, that the court erred in its application of the law by failing to consider all of the mandated factors in determining the alimony issue and compounded that error by failing to make findings of fact relative to all of these said factors.[2]
As great as the trial court's discretion is, it is not given the discretion to disregard the law.
In order to properly review orders of the trial judge, appellate courts must recognize the distinction between an incorrect application of an existing rule of law and an abuse of discretion. Where a trial judge fails to apply the correct legal rule ... the action is erroneous as a matter of law. This is not an abuse of discretion. The appellate court in reviewing such a situation is correcting an erroneous application of a known rule of law.
Canakaris at 1202.
Although the effective date of the amendment to section 61.08(1) (which specifically requires the findings of fact) was July 1, 1991, it applies to this case since the final judgment was not rendered until August, 1991. Fogg v. Southeast Bank, N.A., 473 So.2d 1352 (Fla. 4th DCA 1985). And *1035 since the amendment is primarily intended to make appellate review more meaningful, the appellate court can insist on its application whether or not the parties raise it as an issue on appeal. Both justice and reason compel the appellate courts to insist that these findings of fact accompany any alimony decision  whether alimony is granted or denied.
The essence of justice is that all parties, regardless of gender, race or religion, under similar circumstances, receive substantially the same result in litigation before our courts. This concept of comparable fairness can be achieved only if the appellate court can determine the factors (and the weight given those factors) by the various courts within our jurisdiction. We can do this only if trial courts make the proper findings of fact as required by law.
Even though Canakaris is normally cited for the proposition that the trial court has almost unlimited discretion in domestic matters, it also strongly supports the proposition that the appellate courts must be concerned with comparable fairness.
The discretionary power that is exercised by a trial judge is not, however, without limitation, and both appellate and trial judges should recognize the concern which arises from substantial disparities in domestic judgments resulting from basically similar factual circumstances. [Emphasis added].
* * * * * *
Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness.
Canakaris at 1203.
The findings of fact requirement serves two purposes  both important. First, it requires the judge to determine what the "facts" of the case actually are. Too often appellate judges cite the testimony of one party or the other as the facts of the case. Testimony is not fact until the trial judge says it is fact. In this case, for example, there is testimony that the wife quit her job at Pan American to be with her husband and strengthen the marriage; there is also testimony that she quit her job simply because she hated the work. The trial judge made no finding and, therefore, neither position is a "fact."
The same is true concerning the wife's contribution to the husband's education. There is testimony that the wife paid the rent and utilities on the couple's apartment during the last two quarters of the husband's stay in school. There is also testimony that the husband's parents paid his tuition and books and made other financial contributions to his living expenses and that he worked part-time during this period. The court made no finding as to what the wife's contribution was and how it should affect the issue of alimony, so there is no "fact" on this important issue.
The lack of findings also proves problematic on the issue of what interpretation should be given the wife's testimony regarding her reason for taking a leave of absence from Pan American at the time of the parties' second marriage. Did she merely want to stay home (and was able to take advantage of a leave of absence conveniently being offered by Pan American at that time), or did she make a career sacrifice to benefit the new marriage? We don't know because the trial court didn't tell us.
The second purpose of the findings of fact is even more important. It permits a comparable fairness analysis.
Let's compare this case, for example, with our previous decision in Bujarski v. Bujarski, 530 So.2d 953 (Fla. 5th DCA 1988). First, we must consider the comparable "facts."[3] The Kennedys were married sixteen years  eight years on either side of a short divorce. The Bujarskis were married 29 years. Mrs. Kennedy worked, for all practical purposes, throughout the marriage. Mrs. Bujarski was a *1036 homemaker and student for the greater part of the marriage. Mrs. Kennedy made minimal, at best, contributions to the education of her husband; Mr. Bujarski, through his income, was the sole support of Mrs. Bujarski while she received both a bachelor's and a master's degree. It appears, therefore, that under the section 61.08(2) factors, an equal division of income in Bujarski would be far more appropriate than in Kennedy.
Not so. In Bujarski, at the time of the divorce, Mr. Bujarski who had entered the service as an enlisted man and retired as a commander, was in college and living on his $31,000 annual pension. Mrs. Bujarski was working for AT & T and earning $43,000. The trial court awarded Mrs. Bujarski $200 per month alimony, augmenting her income to over $45,000 and reducing Mr. Bujarski's income to less than $29,000. It was Mrs. Bujarski that appealed, claiming as error the fact that the court treated Mr. Bujarski's pension as a source of income rather than as a marital asset. This, of course, is permitted. See Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986). It was Mrs. Bujarski's position that she should receive one-half of Mr. Bujarski's pension which would then give her an income of $58,000 and Mr. Bujarski an income of $15,500. The trial judge would not (nor would any but one of this court's en banc panel) approve this result. But even so, instead of dividing the income, the trial court in Bujarski required the spouse receiving the lower income to pay alimony to the one receiving a substantially greater income.[4]
The diametric difference results in Bujarski and the present case can only be explained by the luck of the draw of the trial judge or the gender of the higher earning spouse. Neither factor, under a just legal system, should play any role in the outcome of the case. Requiring specific findings of fact will minimize the effect of these irrelevant factors.
It appears that the dissents' criticism of the doctrine of comparable fairness is that it has "a subversive effect on Canakaris." That is, if the appellate panel finds that any specific alimony award is unfair when compared to the range of other awards based on similar facts, it could find that the trial court had abused its discretion. But the court (and all other appellate courts) have been doing something similar for years under the concept that "the wife has been shortchanged." Rey v. Rey, 598 So.2d 141 (Fla. 5th DCA 1992); Decker v. Decker, 534 So.2d 844 (Fla. 5th DCA 1988); Pirino v. Pirino, 525 So.2d 1028 (Fla. 5th DCA 1988); Overstreet v. Overstreet, 513 So.2d 1277 (Fla. 5th DCA 1987); Marsh v. Marsh, 489 So.2d 68 (Fla. 5th DCA 1986); Tuller v. Tuller, 469 So.2d 212 (Fla. 5th DCA 1985); Lynch v. Lynch, 437 So.2d 234 (Fla. 5th DCA 1983); DiPrima v. DiPrima, 435 So.2d 876 (Fla. 5th DCA 1983); Sanders v. Sanders, 435 So.2d 372 (Fla. 5th DCA 1983). This concept has only been applied in favor of the wife and the only limitation on its application is that a majority of the panel  based on whatever standard they choose  find that the trial court did not, in the exercise of discretion, award sufficient property or alimony.
The doctrine of comparable fairness, on the other hand, is intended to protect both spouses from an unreasonable result and limits the ability of the appellate court to interfere with the trial court's discretion to those cases in which the award is outside the range established by precedent for cases based on similar facts. Canakaris appears to welcome this analysis.
*1037 REVERSED and REMANDED for further proceedings consistent with this opinion.
HARRIS, C.J., and DAUKSCH, and PETERSON, JJ., concur.
COBB, J., concurs and concurs specially, with opinion.
THOMPSON, J., concurs specially, with opinion.
W. SHARP, J., dissents, with opinion in which DIAMANTIS, J., concurs.
GOSHORN, J., dissents with opinion.
GRIFFIN, J., dissents with opinion, in which W. SHARP, J., concurs.
DIAMANTIS, J., dissents, with opinion, in which W. SHARP and GRIFFIN, JJ., concur and in which GOSHORN, J., concurs in result.
COBB, Judge, concurring and concurring specially.
I concur with the majority opinion. The provisions of section 61.08(1) and (2), Florida Statutes (1991) require findings of fact by the trial court relative to the enumerated factors set forth in subsection (2) thereof. Clearly, the trial judge in this case did not comply with that requirement. Contrary to Judge Diamantis' dissenting opinion, the requirement for factual findings imposed on a trial judge by the 1991 legislation in section 61.08(1) cannot be ignored by merely citing to the broad discretion afforded a trial judge by the 1980 opinion of the Florida Supreme Court in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). We recently reversed a judgment awarding permanent alimony because of the trial judge's failure to comply with section 61.08, and remanded for appropriate findings of fact. See Moreno v. Moreno, 606 So.2d 1280 (Fla. 5th DCA 1992). Judge Diamantis joined in that opinion, even though the issue was not raised by the appellant. This court should consistently apply the mandate of section 61.08 to all appeals, not merely to some of them on an ad hoc basis.
THOMPSON, Judge, concurring specially.
I agree with the majority that this case should be remanded to the trial court for findings of fact and an entry of an amended final judgment of dissolution consistent with the trial court's findings of fact. See section 61.08(2), Florida Statutes (1991). I only write separately to clarify two points. First, the findings of fact should be in writing. I see no distinction in the practical impact between section 61.08(2) and section 61.075(3). Both require findings of fact that must be preserved for appellate review. To imply that one section requires written findings and the other does not, ensures additional labor for appellate and trial judges and guarantees additional costs and expense for litigants. Second, since the trial court will review the majority opinion and the dissenting opinion and may change the content of the final judgment of dissolution, it is not necessary at this juncture to discuss the other issues raised on appeal.
W. SHARP, Judge, dissenting.
I agree with Judge Diamantis' dissenting opinion, and I write briefly to put this case in the context of family cases decided in this district and in the rest of the state.
In my view, the majority opinion is erroneous because its effect is to establish a rule of law which limits the ability of a trial judge to award permanent alimony, contrary to the forceful directives this court has received in Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991) and Walter v. Walter, 464 So.2d 538 (Fla. 1985). Further, I think there is no basis to conclude that the trial judge abused his discretion in this case by awarding the former wife $1,000 per month permanent alimony, within the guidelines set forth in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
The majority opinion holds, as a matter of law, that a trial court may not "balance" or "equalize" the income streams of former spouses because that is not a proper function of an alimony award. If that is what the trial court in fact did, I would agree. But as pointed out in Judge Diamantis' *1038 opinion, the trial judge was trying to raise the total income for the former wife above that which she could be reasonably expected to earn, so that her standard of living would approach (although the trial judge said he realized it would never equal) the standard of living enjoyed during the parties' long-term marriage.[1] That is clearly a valid function for a permanent alimony award. See, e.g., Bible v. Bible, 597 So.2d 359 (Fla. 3d DCA 1992); Womble v. Womble, 546 So.2d 24 (Fla. 5th DCA 1989).
I am concerned that trial judges in this district will read this majority opinion and conclude that if a former spouse has worked during the course of the marriage, or holds a modestly remunerative job when a dissolution occurs, so that in an abstract sense the former spouse cannot be described as completely destitute and dependent, it is error as a matter of law to award permanent alimony. That, I submit, is contrary to case law from this district as well as our sister courts. See Lanier v. Lanier, 594 So.2d 809 (Fla. 1st DCA 1992); DeCenzo v. DeCenzo, 433 So.2d 1316 (Fla. 3d DCA 1983); O'Neal v. O'Neal, 410 So.2d 1369 (Fla. 5th DCA 1982); Johnson v. Johnson, 386 So.2d 14 (Fla. 5th DCA), rev. denied, 392 So.2d 1375 (Fla. 1980).
In reviewing a dissolution judgment the appellate tribunal has a very limited scope of review. See Walter. It must look at the admitted facts or the disputed facts, resolved in favor of the prevailing party. This the majority opinion fails to do. As pointed out in Judge Diamantis' dissenting opinion, there are several grounds established by this record, which support the trial judge's award of permanent alimony. For example: 1) there is a considerable disparity in the former husband and wife's incomes and expected future earnings, even if the husband's automobile benefits and $500 per month bonuses are not included; 2) this was a 17-year marriage; 3) the former wife testified she gave up a higher paying job with seniority and other benefits, to try to make the parties' marriage "work."[2]
Second, if the trial court correctly "applied the law" to the case on review (as I think it did) then the issue for the appellate tribunal is whether the trial court reasonably exercised its discretionary authority under the test set out in Canakaris. Walter. This means that if there is a basis in the record to support the trial judge's decision, it cannot be said to be unreasonable and arbitrary, and the appellate court must affirm. Marcoux v. Marcoux, 464 So.2d 542 (Fla. 1985).
Here, the trial court correctly looked at the factors set forth in Canakaris:
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course and the value of the parties' estates. (emphasis added).
382 So.2d at 1201-1202.
I submit, further, the trial court's statements in the record indicate it considered appropriate economic factors in making an alimony award as are set out in section 61.08(2), although the requirement to make *1039 findings in the 1991 statute is not applicable to this case.[3] The majority asserts the court must consider all of the listed factors, and if it had, it would not have reached the conclusion it did. That strikes me as untenable. If governed by the statute, the trial court need only consider the factors listed which are "relevant", plus "any other factor necessary to do equity and justice between the parties." § 61.08(2), Fla. Stat. (1991). Here, the trial judge orally, and on the record, considered (a), (b), (d), (f) and (g) of section 61.08(2), although he made no formal "findings." I find no error in this regard in this case because of the effective date of the statute.[4]
Since the trial judge considered appropriate criteria in making his award and the record supports his decision, it follows the trial court's decision cannot be characterized as arbitrary or unreasonable. Cosgrove v. Cosgrove, 491 So.2d 1219 (Fla. 1st DCA 1986). I submit we should affirm the case on the issue of the trial court's award of permanent alimony.
In my view, Bujarski v. Bujarski, 530 So.2d 953 (Fla. 5th DCA 1988), sheds no light on this case. The inequity in that case was the trial court's failure to make any kind of equitable distribution to the wife of the parties' most valuable marital asset (the husband's military pension), resulting in a gross disparity of capital resources between the parties.[5] The so called evil of equalization of income (complained of by the majority opinion in this case) played no part in Bujarski. Had Mrs. Bujarski received an equitable distribution of the vested pension, she would probably not have needed, nor have been entitled to, any alimony. Mr. Bujarski wisely never sought alimony from Mrs. Bujarski. He was far better off with the whole pension.
Apparently, we will not reach the issue of whether the trial court properly ruled that the award would be automatically extinguished if the former wife "cohabits" with another adult male. That was the issue which caused this case to be en banc'd in the first place. If called upon to voice an opinion on that issue, I would vote to adhere to this court's opinion in Schneider v. Schneider, 467 So.2d 465 (Fla. 5th DCA 1985). Thus, I would have reversed only that part of the judgment being reviewed here.
DIAMANTIS, J., concurs.
GOSHORN, Judge, dissenting.
I agree with the dissents of Judges Sharp and Diamantis that the judgment of the trial court should be affirmed. However, because the majority has chosen not to address the "cohabitation" issue, I find it unnecessary to express an opinion thereon at this time.
GRIFFIN, Judge, dissenting.
I agree with Judge Diamantis, Judge Sharp and Judge Goshorn that the award of alimony should be affirmed without further proceedings. I write only to call attention to the first public appearance of the deceptively benign-sounding "doctrine of comparable fairness", a new invention of the four judge plurality.
Nothing explains this new doctrine as eloquently as does the plurality's own application of it. This case is "compared" for "fairness" purposes with this court's 1988 decision, Bujarski v. Bujarski. The issue in Bujarski was the refusal of the trial court to distribute to the wife a share of the fully vested pension of a 29-year marriage as a marital asset because the trial court concluded it would be more equitable *1040 to pay it out to her as alimony. Rosalie Bujarski, who, at the time of the divorce, had an income greater than the amount her ex-husband received in pension payments, contended that she was entitled to distribution of her share of the pension as a marital asset. Although equitable distribution of marital assets (pension or otherwise) is not an issue in this case, and although there was no issue in Bujarski about whether Marcel Bujarski should have gotten alimony, the plurality opinion concludes that if Mary Ann Kennedy is entitled to alimony in this case, Marcel Bujarski should have gotten alimony in 1988  or, conversely stated, since Marcel Bujarski didn't get alimony from a wife who earned more than he did, Mary Ann Kennedy shouldn't get any either.
Without characterizing the purpose of the comparable fairness doctrine, its subversive effect on Canakaris is obvious. Because "no reasonable judge" can make an alimony award that the appellate court concludes is "comparably unfair", any finding of "comparable unfairness" by the appellate court will warrant reversal.
W. SHARP, J., concurs.
DIAMANTIS, Judge, dissenting.
I respectfully dissent.
The plurality opinion concludes that the trial court abused its discretion in awarding permanent periodic alimony because the trial court "erred in its decision to equalize the parties' incomes under the facts of this case." Additionally, the plurality concludes that the trial court erred in failing to make adequate findings of fact; but, rather than specifically remanding for such findings, the plurality opinion reverses for unspecified further proceedings consistent with its opinion. In my view, the plurality improperly limits the broad discretionary authority of the trial court to do equity between the parties to a dissolution proceeding after the trial court has made sufficient findings of fact on the record.
The parties began dating in 1968 while in high school. They attended junior college together and then went to the University of Florida. They were married in June 1973. The wife graduated first, with a degree in education, and took a job as a flight attendant. In 1980 she began to work for Pan Am. The husband finished his degree in journalism and entered the banking business. During the husband's last year in college, the wife supported the household.
In late 1980 the parties divorced but then remarried in August 1981. At that time the wife took an 18-month leave of absence from Pan Am because the parties mutually agreed that it would be best for her to stop working in order to improve their marital relationship. The wife returned to Pan Am in 1983; but in 1988, with the husband's agreement, the wife accepted Pan Am's reduction-in-force buy-out offered to its employees so that she could stay home. In her last year at Pan Am the wife earned approximately $34,500.
When the parties decided to divorce, the wife sought reemployment. She had lost her seniority, however, and would only earn approximately $14,000 a year if she was able to secure employment in the airline industry. The wife then accepted two part-time jobs, one at the airport and one as a substitute teacher. She later obtained full-time employment as an elementary school teacher at an annual salary of $21,250. The wife also has gross rental income of approximately $6,000 per year from property that she received in these dissolution proceedings; however, she must pay the monthly expenses on that property and, additionally, must pay her personal monthly housing expenses.
In contrast, the husband's annual income is $51,452. He also receives an annual bonus of approximately $9,800, plus the use of an automobile. The trial court found that the annual bonus results in additional net income after taxes to the husband of approximately $500 each month. The marital home was awarded to the husband.
To fully understand the nature of the trial court's ruling, one must review the trial court's post-trial findings:

*1041 I think that the amount of alimony awarded is appropriate. I view this as a 17-year marriage. Because of the brief interlude during which the parties were divorced, it's a long term marriage where alimony is appropriate, and my decision is based on the statutory language which requires me to do my dead level best to preserve the standard of living of both parties.
Frankly, that's impossible to do here because this was a two wage-earner household for a long period of time and the parties' standard of living was best measured by their total income. They enjoyed a relatively high standard of living, perhaps not luxurious. It's not  I've seen cases where there were five-, six-hundred-thousand-dollar-a-year income and they have a lavish style of living. This certainly isn't a lavish style of living and they typically would spend their earnings and they enjoyed the benefits of American society to its fullest. And where this is a couple that both have been earning  two wage-earner household and try to divide that in two, you simply can't provide the same standard of living that the parties enjoyed before, and the best I can do is to try to make their standards of living relatively equal.
The law does not say that because the wife is self-supporting in the sense that she is gainfully and admirably employed. She is a school teacher and she is doing the best for society and she is making the best and highest attainment of her education. She is teaching school. But that's a relatively low paying job. She is able to support herself on that income, and yet it does nothing to maintain the standard of living that she previously had.
So the best I can do is try to balance those incomes as best I can. And I do so by dividing the assets of the parties equally and providing her with an addition to that income. Mrs. Kennedy may want to appeal my ruling.
* * * * * *
Because the income that she will be left with is not as great as Mr. Kennedy's income and she may feel that she is entitled to more alimony because she may feel that I should have awarded her $1,500 or $2,000 a month in order to equalize it. I haven't done that. I have divided that in the amount that I think is equitable between the parties. [Emphasis added].
In awarding the wife $1,000 a month in alimony, the trial court found:
Now, having distributed the assets equally, each party is on an equal footing as we are here today, and the second step is to take a look at the lifestyle enjoyed by the parties and try to allow such party to maintain a standard of living as much as possible in line with the standard of living that they enjoyed.
It's not possible to maintain for the wife the standard of living that she enjoyed prior to the divorce, because to do so would impoverish the husband. And he has a greater income; he has an ability to pay alimony. She has the need for income to maintain as much as possible the semblance of standard of living that she had during the time of the marriage, and the only way to achieve that goal is with an award of permanent alimony.

It is long-term marriage even though there were no children. She, even though she worked during the time of the marriage, in order to keep the parties reasonably equal, a standard of living reasonably equal to that which they enjoyed during time of their marriage, an award is going to be necessary. [Emphasis added].
Also, the trial court took into account the fact that the alimony award constitutes taxable income to the wife and a tax deduction to the husband.
There is one constant rule of law regarding the standard of review that is applicable to dissolution cases:
Application of the rules for determining alimony is primarily the responsibility of the trial court, which is acquainted first hand with the evidence, and is also *1042 in a position to know local economic conditions.
* * * * * *
In the absence of a clear showing of abuse of discretion, the judgment of the trial court should [be] upheld, regardless of the merits of the alimony award, considered de novo.

Sisson v. Sisson, 336 So.2d 1129, 1130 (Fla. 1976).
In this regard, "[f]indings of fact by a trial court are presumed to be correct and are entitled to the same weight as a jury verdict." Marsh v. Marsh, 419 So.2d 629, 630 (Fla. 1982) (in dissolution of marriage action, district court improperly substituted its judgment for trial court's when district court vacated trial court's finding in favor of husband). See also Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983) (reversing district court and reinstating trial court's judgment which awarded rehabilitative rather than permanent alimony to 36-year-old wife of 12-year marriage and ordered sale of marital home even though younger child would not reach age of majority for 14 years); Strawgate v. Turner, 339 So.2d 1112 (Fla. 1976). Different triers of fact (whether a jury or a judge) reach different results based upon the particular facts presented in each individual case. Each case turns on facts peculiar to it and the weight to be given these facts by the trier of fact. Each trier of fact brings its own experience and applies its reasoned judgment to each individual case. Thus, mathematical and mechanical certainty do not exist and have never existed regarding factual and discretionary determinations. Consequently, I conclude that any reliance on Bujarski v. Bujarski, 530 So.2d 953 (Fla. 5th DCA), rev. denied, 537 So.2d 568 (Fla. 1988), is misplaced. Bujarski upheld the trial court's discretionary authority under Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), and, thus, is not authority for reversing a trial court for exercising its Canakaris discretion.
In Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), the Supreme Court unequivocally stated that, in making financial awards in dissolution proceedings, the trial court has broad discretion to do equity between the parties:
The [trial] judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump sum alimony, permanent periodic alimony, rehabilitative alimony, child support, a vested special equity in property, and an award of "exclusive possession of property".
Id. at 1202 (emphasis added). Consistent with its earlier position, the Court further stated:
We recognize that a trial court need not equalize the financial position of the parties.
Canakaris, 382 So.2d at 1204 (emphasis added). Although a trial court need not equalize the financial positions of the parties, under its broad discretionary authority, the trial court certainly has discretion to do so.
In Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991), the Court reiterated its position that rules of law should not be applied by a district court to limit the broad discretionary authority of the trial court:
With regard to the second issue, we again emphasize that an appellate court, in reviewing a dissolution judgment, must examine the judgment as a whole in determining whether the trial court abused its discretion.
* * * * * *
The district court clearly did not do so in this instance. Its decision was based on its view that when there is a distribution of substantial assets to the parties, the trial court has no authority to award permanent periodic alimony. This view is both an application of an erroneous rule of law and a piecemeal approach to the consideration of a final judgment. We find that the district court had no basis to hold that the trial judge abused his discretion without considering the judgment as a whole and, particularly, *1043 whether the trial judge utilized alimony to balance inequities... .
Hamlet, 583 So.2d at 657 (emphasis added).
Earlier, in Walter v. Walter, 464 So.2d 538 (Fla. 1985), the Court specifically cautioned district courts against establishing rules which unduly restrict the discretionary authority of trial courts:
While we recognize the significant responsibility of the district courts to review the reasonableness of discretionary acts of trial courts in dissolution proceedings, we must reject the establishment of new rules of law that would unduly restrict the discretionary authority of trial judges to render equitable property dispositions or support and alimony awards. See Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985). We reiterate that "[i]n considering the appropriate criteria for the award of the different types of alimony, it is important that appellate courts avoid establishing inflexible rules that make the achievement of equity between the parties difficult, if not impossible." Canakaris, 382 So.2d at 1200 (emphasis added). That statement reflects our recognition that the discretionary authority granted trial judges in dissolution matters is necessary because such cases are not susceptible to fixed patterns.
Walter, 464 So.2d at 540.
The legislature, by enacting section 61.08(2), Florida Statutes (1991), has also recognized the broad discretion which trial courts possess in awarding alimony. This section enumerates the economic factors a trial court should consider in awarding alimony.[1] These factors include the standard of living established during the marriage, the duration of the marriage, the financial resources of the parties, the assets distributed to each party, and all sources of income available to either party. The statute further provides that the trial court "may consider any other factor necessary to do equity and justice between the parties." Clearly, the legislative mandate of section 61.08 reaffirms the ruling in Canakaris. See Canakaris, 382 So.2d at 1201-1202.
A majority concludes that the trial court's award of permanent alimony is improper because the court failed to apply all of the factors set forth in section 61.08 and to make the requisite findings of fact. I would first point out that this issue was neither raised on appeal nor raised in the trial court by appellant. On appeal, appellant only contends that the trial court abused its discretion in awarding alimony. In any event, the trial court specifically considered and made findings on the record as to factors (a), (b), (d), (f), and (g) of section 61.08(2). There is no indication that the trial court did not consider the other enumerated factors, (c) and (e); rather, the record indicates that the trial court was aware of the statute and, if the trial court considered those two factors relevant, it would have made specific findings relative thereto.[2] Additionally, this case was tried *1044 in June 1991, prior to the amendment to section 61.08(1), effective July 1, 1991, which requires trial courts to make "findings of fact relative to the factors enumerated in [section 61.08(2)]." § 61.08(1), Fla. Stat. (1991).[3]Compare Moreno v. Moreno, 606 So.2d 1280 (Fla. 5th DCA 1992) (post-amendment dissolution matter where issue on appeal was whether meaningful review of permanent alimony award was possible where trial court made no findings of fact in its final judgment of dissolution; case was remanded for purpose of making such findings).
In reviewing the trial court's decision to award permanent alimony, this court "must affirm if there is a reasonable basis in the record for such a determination." Moore v. Moore, 543 So.2d 252, 255 (Fla. 5th DCA 1989) (citing Walter v. Walter, 464 So.2d 538 (Fla. 1985), and Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980)). In analyzing the statutory factors, I conclude that the plurality fails to give due deference to the trial court's record findings.
The trial court specifically considered the duration of the marriage, which the trial court found to be a long-term marriage,[4] the standard of living of the parties,[5] the ability of the husband to pay alimony, the need of the wife for alimony, the contribution of the wife to the family income, and the superior financial remuneration the husband, as a banker, receives as compared to the relatively low salary which the wife, as a teacher, receives.[6]
Further, the wife, with the husband's consent, opted to leave her $34,500-per-year job before Pan Am failed in order to improve the parties' marital relationship. By doing so, the wife lost her seniority in the airline industry. Her present annual salary is approximately $21,250. Thus, by leaving Pan Am, the wife lost approximately $12,000 a year in salary. This decision to sacrifice the wife's seniority in the airline industry and substantial income potential qualifies as either a contribution to the marriage or "any other factor necessary to do equity and justice between the parties."[7] *1045 But, more importantly, it adds additional support to the trial court's conclusion to award alimony. In this regard, the record must be reviewed in the light most favorable to the wife, who was the prevailing party. See Carolina Lumber Co. v. Daniel, 97 So.2d 156 (Fla. 1st DCA 1957). "Accordingly, if upon the pleadings and evidence before the trial court, there was any theory or principle of law which would support the trial court's judgment in favor of" the wife, this court is "obliged to affirm [the] judgment." Cohen v. Mohawk, Inc., 137 So.2d 222, 225 (Fla. 1962) (emphasis in original).
In my view, the trial court possessed the broad discretion to award permanent periodic alimony in this case. In entering the award, the trial court properly considered that the parties' marriage was one of long duration, that the standard of living enjoyed by the parties during the marriage was comfortable, that the wife was in need of alimony, that the husband had the superior earning ability and the ability to pay alimony, and that the distribution of the assets was nearly equal. The fact that some members of this court might have ruled differently sitting in the trial judge's place does not equate with an abuse of the broad discretionary authority possessed by the trial court.[8] In reviewing discretionary acts, "the appellate court must fully recognize the superior vantage point of the trial judge" and "[i]f reasonable [persons] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Canakaris, 382 So.2d at 1203. See also Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991); Walter v. Walter, 464 So.2d 538 (Fla. 1985). An appellate court cannot substitute its judgment for the trial court's in reaching a contrary decision. Marsh v. Marsh, 419 So.2d 629, 630 (Fla. 1982).
Rather than remanding this case to the trial court in order for the judge who tried this case to make the statutory findings of fact, the plurality reverses for further proceedings. In my view, further proceedings are not necessary because the amendment requiring statutory findings was not in effect at the time the trial court conducted the trial in this matter and because the trial court made sufficient findings on the record. However, even if the plurality is correct in concluding that the trial court erred in failing to make the required findings, such error occurred several weeks after the completion of the trial when the trial court entered its final judgment. Thus, any concern regarding adequate findings can be met by remanding with specific instructions that the trial judge who tried this matter enter an amended final judgment making the requisite findings.[9]See Moreno v. Moreno, 606 So.2d 1280 (Fla. 5th DCA 1992). Further, because further proceedings will result in increased attorney's fees, the wife, who earns substantially less than the husband, will be impacted more unless the wife is awarded attorney's fees by the trial court in any such further proceedings.[10]
Also, in reversing the alimony award, the plurality fails to instruct the trial court, in *1046 the event it should deny alimony in any future proceedings, to retain jurisdiction to award alimony in the future even though this case involves a long-term marriage and the wife is a recently-hired elementary school teacher without tenure, seniority, or vested retirement, while the husband is a banker with many years experience and clearly earns considerably more than the wife. This failure compounds both the injustice of, and the error in, the plurality's decision. See Moore v. Moore, 401 So.2d 841 (Fla. 5th DCA 1981) (proper for trial court to retain jurisdiction to award alimony to husband in future). See also Walter, 464 So.2d at 540; Canakaris, 382 So.2d at 1201; Strahan v. Strahan, 605 So.2d 1316 (Fla. 4th DCA 1992); Mullins v. Mullins, 409 So.2d 143 (Fla. 4th DCA 1982).
Apparently, we will not reach the issue of whether the trial court properly ruled that the alimony award would automatically be extinguished if the wife "cohabits" with another adult male. If called upon to voice an opinion on that issue, I would vote at this time to strike the provision from the final judgment on the authority of Condren v. Condren, 475 So.2d 268 (Fla. 2d DCA 1985); Tyler v. Tyler, 427 So.2d 1027 (Fla. 2d DCA 1983); and Dominik v. Dominik, 390 So.2d 81 (Fla. 3d DCA 1980). See also Buscemi v. Buscemi, 610 So.2d 674 (Fla. 2d DCA 1992); Townsend v. Townsend, 538 So.2d 129 (Fla. 2d DCA 1989).
In conclusion, I am struck by the irony of the trial court's comment that "Mrs. Kennedy may want to appeal my ruling" because the trial court felt that it may have been shortchanging her. Little did Mrs. Kennedy realize that she might someday be seeking further review of this matter or going through both additional trial and appellate proceedings which will result in even more attorney's fees and costs for both parties.
W. SHARP and GRIFFIN, JJ., concur.
GOSHORN, J., concurs in result only.
NOTES
[1] The grant of alimony in this case is also contrary to the court's statement in Cornell v. Smith, 616 So.2d 629 (Fla. 4th DCA 1993):

In fact, our own research indicates that the courts of this state have consistently held that mere disparity of income is not sufficient to justify an award of permanent alimony where the wife is relatively young and her earning capacity has not been impaired as a result of the marriage.
[2] If the equal sharing of income is justified in this case, it appears that it would be justified in any case in which the parties have been married long enough for some trial judge to classify the marriage as "long term." Eight years was held long enough to justify permanent, periodic alimony by a trial judge in Wismar v. Wismar, 522 So.2d 552 (Fla. 5th DCA 1988). This makes alimony nothing less than an annuity giving one spouse an interest in the other spouse's income up to the amount necessary to assure equal incomes. This is not the traditional concept of alimony nor is it consistent with Canakaris nor section 61.08. It totally ignores the factors of age, length of marriages (other than a determination that it is, in fact, long term), mental and emotional health of the parties, length of time necessary to make the receiving spouse self-supporting, if possible, and the contribution of the receiving spouse to "home making, child care, education and career building" of the other party. It makes no distinction between the award to this young wife of sixteen years who was not a homemaker, raised no children, made minimal contributions to her husband's education and played no demonstrable role in his career building and the award that would go to an older wife of a thirty-year marriage, who worked her husband's way through college, then stayed home to care for the home and raise children and then enter the job market only after the children were old enough to care for themselves. The factors mandated by section 61.08(2) would indicate that there should be a difference.
[3] Obviously in the present case, we must rely more on testimony than facts, but at least this testimony is uncontradicted.
[4] We agree that the trial court in Bujarski was correct in retaining jurisdiction in order to award Mrs. Bujarski additional support should she lose her job or not become vested with a sufficient pension upon retirement, (incidentally, the husband was given no share in the wife's pension) but we feel that the more appropriate alimony award would have been a nominal award. See Fusco v. Fusco, 616 So.2d 86 (Fla. 4th DCA, 1993). Although not necessary to the decision, we also agree that the trial court was not required to share Mrs. Bujarski's greater income with her husband who was well able to provide for his own needs without her assistance. We do urge, however, that if a long term marriage is the only criteria for income sharing, it ought to be applied evenhandedly.
[1] In announcing its judgment at the end of this case, the trial judge said:

[THE COURT]: And all in all, I think this achieves as close as possible to an equal distribution of the assets and allows the parties to maintain a relatively equal standard of living, although neither party will have a standard of living that approaches what they had together during this time.
[2] The former wife testified her decision to leave Pan Am and accept its "Buy-out" Plan was a mutual one concurred in by the former husband. She said: "I felt like I wanted to stay home and he wanted me to stay home." She received almost all the $15,000 buy out owed her from Pan Am. She put it into their joint savings and they spent a substantial amount for living expenses, and split the balance after the dissolution.
[3] The effective date of section 61.08(1) is July 1, 1991. This case was tried prior to that date.
[4] Although no cases have specifically spoken to the retroactive application of section 61.08(1) and (2), in Larrauri v. Larrauri, 584 So.2d 31, 32 (Fla. 3d DCA 1991), decided July 2, 1991 (one day after the effective date of section 61.08(1) and (2), the third district affirmed that portion of a judgment which awarded alimony based on consideration of the factors set forth in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) and in section 61.08(1). Also analogous is section 61.075 which has been applied only prospectively.
[5] See Bujarski v. Bujarski, 530 So.2d 953 (Fla. 5th DCA 1988) (Sharp, W., J., dissenting).
[1] Section 61.08(2) provides in pertinent part:

61.08 Alimony. 
* * * * * *
(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the non-marital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.
§ 61.08(2), Fla. Stat. (1991).
[2] Section 61.08(1), Florida Statutes (1991), does not specifically require that these findings be set forth in the final judgment; therefore, oral findings made on the record are sufficient. See Gidden v. State, 613 So.2d 457 (Fla. 1993). Compare section 61.075(3), Florida Statutes (1991), which requires "specific written findings of fact" relative to the distribution of marital assets and liabilities in a contested dissolution action. § 61.075(3), Fla. Stat. (1991) (emphasis added). But see Jacques v. Jacques, 609 So.2d 74 (Fla. 1st DCA 1992) (requiring written findings of fact under section 61.08(1) without discussing the distinction between the two statutes).
[3] The final judgment was entered on July 13, 1991, nunc pro tunc to June 14, 1991. The judgment was recorded in August 1991. The husband, in his motion for rehearing, did not request specific findings under section 61.08(1). Additionally, Fogg v. Southeast Bank, N.A., 473 So.2d 1352 (Fla. 4th DCA 1985), is inapplicable because that case dealt with the issue of whether an amendment to the balloon mortgage statute was applicable to a mortgage executed prior to the date of the amendment which was in effect at the time of the trial.
[4] See Atkins v. Atkins, 611 So.2d 570 (Fla. 1st DCA 1992) (approving award of permanent alimony, but reversing because amount was insufficient, to 41-year-old wife of 17-year marriage producing no children); Cruz v. Cruz, 574 So.2d 1117 (Fla. 3d DCA 1990) (concluding that 17-year marriage was long-term where wife, who had custody of youngest child, would enter job market at age 46).
[5] See White v. White, 617 So.2d 732, 734 (Fla. 2d DCA 1993) (error not to award permanent alimony to middle-aged woman, who was approximately 46 years old after ten-year marriage, whose marital standard of living could not be met by her employment opportunities at the time of trial even though she was in good health and had prospects for appropriate employment); Gregoire v. Gregoire, 615 So.2d 694, 695 (Fla. 2d DCA 1992) (affirming award of permanent alimony to 37-year-old wife of 11-year marriage producing two children even though wife was "qualified and able to earn a living"); Womble v. Womble, 521 So.2d 149, 150 (Fla. 5th DCA), rev. denied, 528 So.2d 1184 (Fla. 1988) (error not to award permanent periodic alimony where wife's potential salary from full-time employment as physical therapist did not "appear sufficient to support her at the standard approaching that which existed during the marriage"). See also O'Neal v. O'Neal, 410 So.2d 1369, 1371 (Fla. 5th DCA 1982) ("A person is not self-supporting simply because he or she has a job and income. The standard of living must be compared with the standard established during the course of the marriage.").
[6] See Sinclair v. Sinclair, 594 So.2d 807 (Fla. 3d DCA 1992) (holding that permanent alimony award of $1,500 per month to wife was inadequate, although she earned $2,253 per month as a school teacher, where husband, an attorney, earned $8,762 per month); Lanier v. Lanier, 594 So.2d 809 (Fla. 1st DCA 1992) (error to deny wife permanent periodic alimony where wife's earning potential as a school teacher was about $20,000 and husband earned about $50,000 at time of dissolution).
[7] See Fontana v. Fontana, 617 So.2d 418 (Fla. 1st DCA 1993) (error not to award permanent alimony to nearly 41-year-old wife after 22-year marriage who sacrificed any hope of career at higher-paying employment in order that husband, who made 2 1/2 times that of wife, could further his Navy career); Nelson v. Nelson, 588 So.2d 1049 (Fla. 2d DCA 1991) (court considering significant fact that wife, by parties' agreement, discontinued her career as radiation oncology technician in order to stay home and care for parties' child).
[8] See Cason v. Cason, 592 So.2d 1277 (Fla. 5th DCA 1992) (Cowart, J., concurring specially) (upholding trial court's denial of husband's petition for modification of alimony); Miller v. Miller, 602 So.2d 591 (Fla. 5th DCA 1992) (upholding trial court's ruling regarding wife's petition for modification).
[9] Presumably, the trial judge who tried this matter can reinstate the alimony award and make the requisite statutory findings by stating which factors he considers relevant or irrelevant and the reasons in support of the factors regarding the award of alimony, as well as the reason that any particular factor is not relevant. If this trial judge is now sitting in another division of the circuit court, the chief judge should assign this matter to the original trial judge.
[10] See Whitesides v. Whitesides, 585 So.2d 498, 499 n. 1 (Fla. 3d DCA 1991); Blackburn v. Blackburn, 513 So.2d 1360 (Fla. 2d DCA 1987).