701 So.2d 1245 (1997)
Charles James KILLIUS, Appellant/Cross-Appellee,
v.
Sherril Ann KILLIUS, Appellee/Cross-Appellant.
No. 97-342.
District Court of Appeal of Florida, Fifth District.
December 5, 1997.
*1246 R. Steven Ruta and Victor L. Chapman of Barrett, Chapman & Ruta, P.A., Orlando, for Appellant/Cross-Appellee.
Richard A. Colegrove, Jr., Sanford, for Appellee/Cross-Appellant.
W. SHARP, Judge.
Charles Killius appeals from a final judgment in a dissolution case. He argues on appeal that the trial court erred by not making specific findings of fact concerning all of the factors set forth in section 61.08(2), Florida Statutes, and in setting the amount of permanent alimony which was awarded. We affirm.
The trial court did make specific findings referencing some of the factors set forth in section 61.082(2). Specifically, the trial court found:
2. The parties have one(1) minor child,..., born November 6, 1979 who is presently residing with the Petitioner/Husband under a previous Order of the Court.
3. The parties were married on the 26th day of May, 1973 in Maitland, Florida.
4. During the first few years of the marriage, the Wife worked as a store clerk, checkout person and the like, to assist the family to earn an income while the Husband attended college.
5. Since the birth of the parties' youngest child the Wife has primarily been a housewife.
6. Thus, the Wife has been, generally speaking, an unemployed housewife for the last seventeen (17) years of the parties marriage, with employment being primarily as a temporary or part-time employee.
7. The Husband has been employed for the entire time of the parties' marriage.
8. At the time of the parties' marriage, the Wife was seventeen (17) years old and had not graduated from high school.
9. The Wife did not continue her formal education during the marriage and therefore has no job or educational skills.
10. Based on the Wife's lack of job or educational skills, the Wife is unable to earn sufficient income to support herself in a manner remotely resembling the standard of living achieved by the parties during their marriage.
11. The Wife is in need of, and entitled to receive permanent periodic alimony.
12. The Husband is able to pay permanent periodic alimony.
13. The Husband is entitled to receive child support for the support of the minor child of the parties.
14. The assets and debts of the parties have been previously divided.
15. There is a disparity in the income of the parties and under normal circumstances the Wife would be entitled to a contribution for attorney's fees. However, inasmuch as the Husband is ordered to pay permanent periodic alimony and the minor child is primarily residing with the Husband, each party should bear the cost of their own attorney.
16. The marriage is irretrievably broken.
Missing from these findings are ones concerning the age and physical and emotional condition of each party, and the time necessary for the wife to acquire sufficient education or training to enable her to find appropriate employment and all sources of income available to either party. Further, the husband notes a lack of findings concerning the standard of living during the marriage, financial resources of each, and non-marital and marital assets and liabilities distributed to each. We are reluctant to say that findings must be made on each and every factor mentioned in section 61.082(2), where they are not relevant or not a primary basis for the trial judge's decision.
For example, in this case, the parties had minimal marital assets and liabilities, and no non-marital assets, and no other sources of income available to the parties other than their own earnings or salaries. It so appears from the financial affidavits in the record and testimony at trial, which were undisputed. It would be a waste of judicial time to send this case back for a zero finding.
Similarly, the ages of the parties can be deduced mathematically from other findings: For example, the wife was approximately 40 at the time of the dissolution, having been *1247 married at age 17, and the marriage having lasted 23 years. The transcript established the former husband was 43 at the time of the dissolution. The ages of the parties or their good health were not in dispute. Based on the testimony, neither party was in poor health, both being able to work for hourly wages at the time of the dissolution. These were also non-issues in the case.
Finally, since the trial court found that the wife should be awarded permanent alimony, the extent of time to "retrain" or "rehabilitate" her is also a non-issue, logically requiring no specific findings. The court did make sufficient findings quoted above upon which to premise an award of permanent alimony. These findings were based on competent and sufficient evidence.
The husband also urges on appeal that the trial court breached its discretion in calculating the amount of permanent alimony. The wife had just turned 17 years old when the parties married. She was going to Seminole Junior College to obtain a GED. The parties moved to Atlanta so that the husband could go to college and the wife had to drop her plans to obtain her GED. The wife then worked full time to support the family while the husband went to college. She stopped working after their second child was born, 17 years ago. Since that time, the wife has been primarily a homemaker and has worked outside the home only for a few months here and there. The most she had earned in the past at part time and temporary jobs was $4,000 to $5,000 per year.
The wife currently works over the Christmas holidays at the United States Post Office, earning $7.00 per hour. There is no guarantee that the wife will be able to work next year at the post office and the position does not offer other possibilities for employment. The wife had done some babysitting in her home but that now requires schooling and training to obtain a license. The wife is going back to Seminole Junior College to obtain her GED. Without her GED, the wife was only marginally employable and was qualified for only minimum wage jobs such as a cashier at a fast food restaurant.
The husband acknowledged that the wife did not have the type of employment experience that he has, and that she stayed home and took care of the family for the majority of their marriage. The husband also admitted that he had always provided the majority of the family income. The husband began his career as a hourly employee at a grocery store. Over the course of 20 years, the husband steadily progressed and eventually became a store manager. At one point in the marriage, the husband had earned $47,000 per year. However, he was terminated from his position for making loans to employees contrary to the store's policy. The husband was able to obtain a part time position at Publix, earning $5.50 per hour. He got promoted rather quickly to full time and his hourly wage went up to about $7.50 per hour. He received more hourly raises, up to $8.00 and then $8.25, which is his current wage. His monthly income is $1,122. With overtime, the husband could expect to earn between $20,000 and $22,000 a year.
In making its permanent alimony award to the wife, the court stated it was not imputing $47,000 earnings to the husband, but was basing its award on his current earnings. It calculated the amount the husband would have to pay as child support, based on his current earnings, were the minor son not living with him ($110.00), and deducted that sum from the alimony to be paid to the former wife by way of offset. Thus, the trial court concluded that the husband should pay the wife $275.00 per month until February 1, 1999, and thereafter he should pay her $385.00 per month.
This figure is roughly one-third or less of the husband's net income. The wife's past earnings were $4,000 to $5,000 per year. Assuming she is able to earn a similar amount, her income, including alimony, will still only be approximately $10,000. After deducting the amount of alimony to be paid to the wife, the husband's income will be at least $15,380. The husband's expenses have been reduced as he shares the cost of rent, utilities, telephone, and groceries with his girlfriend. For example, the husband's rent is only $250 per month. If circumstances improve for either party, as the trial judge pointed out, a modification of the alimony obligation would be appropriate. However, *1248 based on the current circumstances of the parties, the trial court did not abuse its discretion in making this alimony award.
AFFIRMED.
GOSHORN, J., concurs.
THOMPSON, J., concurs specially with opinion.
THOMPSON, Judge, concurring with opinion.
I concur in the result reached by the court because it is obvious that the parties have scarce resources and that it would disserve them to remand the matter for additional findings. Although the trial court did not include specific findings of fact on all relevant economic issues, by reviewing the record in light of the factors set forth in subsection 61.08(2), Florida Statutes, we are able to discern evidence to justify the court's ruling. I write separately to urge trial judges to comply with the statute and make complete, written findings of fact.
Unfortunately, the failure of a trial court to make complete findings forces the appellate courts into a factual review of the case. Practically, we are required to review the record to make findings of fact that should have been made by the trial court. This, however, defeats one purpose of the statute, which is to have the trial court make findings of fact to assist the appellate court in providing a meaningful review. See Rausch v. Rausch, 680 So.2d 624, 625 (Fla. 5th DCA 1996). This court has held that the failure to comply with the statute will result in reversal and remand. Kennedy v. Kennedy, 622 So.2d 1033 (Fla. 5th DCA 1993), rev. dismissed, 641 So.2d 408 (Fla.1994); Rausch. Cf. Brock v. Brock, 682 So.2d 682 (Fla. 5th DCA 1996) (holding trial court's failure to consider all of the factors in section 61.08(2) is harmless error in light of ruling that wife is not and could not be entitled to rehabilitative alimony). Unfortunately, a remand punishes the litigants and delays the final resolution of the case. This case is one of an increasing number in which the findings of fact are inadequate. To assist the litigants and to assist the appellate courts with their review, trial judges should make complete findings rather than rely upon the appellate court to search the record for evidence to support the result reached by the trial court.